PATRICK J. HARAN vs. BOARD OF REGISTRATION IN MEDICINE.

Suffolk. September 11, 1986. — November 19, 1986.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & O'CONNOR, JJ.

*Board of Registration in Medicine. Doctor,* License to practice medicine. *Administrative Law,* Regulations, Retroactive effect of regulation, Hearing. *Collateral Estoppel. Due Process of Law,* Collateral estoppel, Administrative hearing.

Suspension by the Board of Registration in Medicine in 1981 of a physician's license to practice, on the ground that the physician had had his license revoked in New York in 1979, did not amount to a retroactive application of a regulation promulgated by the board in 1980 permitting it to give collateral estoppel effect to disciplinary action against a physician taken in another State "for reasons substantially the same" as those for which physicians may be disciplined in the Commonwealth. [574-575]

A regulation promulgated by the Board of Registration in Medicine, permitting the board to give collateral estoppel effect to disciplinary action against a physician taken in another State "for reasons substantially the same" as those for which a physician may be disciplined in the Commonwealth, did not, as applied to a physician whose license to practice had been revoked in New York for "negligence . . . on more than one occasion," permit the board to penalize the physician for conduct not otherwise actionable in Massachusetts, where the· board's regulations provided for disciplinary action against a physician based on "negligence on repeated occasions." [575]

A disciplinary proceeding against a physician in which the only evidence introduced was the physician's Massachusetts registration, Massachusetts regulations including one giving collateral estoppel effect to certain disciplinary actions against a physician in another State, and records of New York disciplinary proceedings against the physician, including a conclusion that the physician had been guilty of "negligence and incompetence on more than one occasion" and separate factual findings of negligence and incompetence on twelve separate occasions, did not deprive the physician of due process of law nor violate his statutory right to a hearing under G. L. c. 112, §§ 5 and 61, and G. L. c. 30A, § 10. [576-578]

There was no merit to a contention made by a physician, challenging the validity of the suspension of his license to practice by the Board of Registration in Medicine, that it was fundamentally unfair to permit the

board to treat New York's revocation of his license as preclusive of litigation on that question before the board, without also giving collateral estoppel effect to a subsequent decision in New York reinstating his license on the sole ground that the physician had "demonstrated his rehabilitation." [578-579]

A physician whose license to practice was suspended by the Board of Registration in Medicine based on revocation of the physician's license in New York for "negligence on more than one occasion" was not entitled, in the circumstances, to present evidence before the board on alleged dissimilarities between the New York and Massachusetts disciplinary standards and definitions of "negligence." [579-580]

There was no merit to a contention made by a physician whose license to practice had been suspended by the Board of Registration in Medicine, upon a showing of a prior revocation of his license to practice in New York, that the board had failed to consider whether he had had a full and fair opportunity to litigate the question of his negligence in the New York proceedings. [580-581]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on October 11, 1984.

The case was heard by *Lynch*, J.

*William L. Pardee*, Assistant Attorney General, for the defendant.

*Michael L. Blau* for the plaintiff.

LIACOS, J. The plaintiff, Patrick J. Haran, is a physician licensed to practice medicine in the Commonwealth and in the State of New York. In 1979, Haran was found by the disciplinary authority in New York to have been guilty of negligence and professional incompetence on at least twelve occasions. His license to practice in New York was revoked. Nearly one year later, the Massachusetts Board of Registration in Medicine (board) promulgated a regulation permitting it, in disciplinary hearings, to give collateral estoppel effect to a sister State's disciplinary actions "for reasons substantially the same" as those for which physicians may be disciplined in the Commonwealth. See 243 Code Mass. Regs. § 1.03 (5) (a) (12) (1980) (hereafter, par. 12).[1]

---

[1] The authority of the board to discipline physicians is found in G. L. c. 112, §§ 5 and 61 (1984 ed.). Section 5 provides in relevant part:

In 1981, the board initiated action against Haran, relying on the New York suspension. In 1982, Haran was reinstated in New York on the sole ground that he had "demonstrated his rehabilitation." Hearings then proceeded in Massachusetts on the 1981 complaint. The hearing officer for the board, relying on par. 12, ruled that the New York finding of negli-

> "The board shall investigate all complaints relating to the proper practice of medicine by any person holding a certificate of registration . . . .
>
> "The board may, after a hearing pursuant to chapter thirty A, revoke, suspend, or cancel the certificate of registration, or reprimand, censure, impose a fine . . . or otherwise discipline a physician . . . upon proof satisfactory to a majority of the board that said physician: —
>
> " . . . .
>
> "(c) is guilty of gross misconduct in the practice of medicine or of practicing medicine fraudulently, or beyond its authorized scope, or with gross incompetence, or with gross negligence on a particular occasion or negligence on repeated occasions;
>
> " . . . .
>
> "(h) is guilty of violating any rule or regulation of the board, governing the practice of medicine.
>
> "The board shall, after proper notice and hearing, adopt rules and regulations governing the practice of medicine in order to promote the public health, welfare, and safety and nothing in this section shall be construed to limit this general power of the board."

See Raymond v. Board of Registration in Medicine, 387 Mass. 708, 710-711, 714 (1982).

The regulation in issue, 243 Code Mass. Regs. § 1.03 (5) (a) (1980), provides in part:

> "A complaint against a physician must allege that a registrant is practicing medicine in violation of law, regulations, or good and accepted medical practice and may be founded on any of the following:
>
> " . . . .
>
> "3. gross misconduct in the practice of medicine, or practicing medicine fraudulently, or beyond its authorized scope, or with gross incompetence, or with gross negligence on a particular occasion or negligence on repeated occasions;
>
> " . . . .
>
> "11. violation of any rule or regulation of the Board governing the practice of medicine.
>
> "12. having had his right to practice medicine in another jurisdiction restricted in any way as a result of a disciplinary action by the proper licensing authority for reasons substantially the same as those set forth in 243 CMR 1.03 (5) (a) (1) through (11)."

gence precluded Haran from relitigating the question whether he had violated Massachusetts disciplinary standards; therefore, the hearings were limited to the issue of what sanctions to impose. In 1984, the board accepted the hearing officer's findings and recommendations and voted to suspend Haran's Massachusetts license for two years. The board, however, taking cognizance of the later New York finding that Haran had rehabilitated himself, stayed the suspension. Haran appealed to a single justice of this court pursuant to G. L. c. 112, § 64 (1984 ed.). The single justice vacated the suspension, ruling that the board had applied par. 12 improperly because (1) it was applied retroactively, and (2) regulations promulgated pursuant to G. L. c. 30A (1984 ed.) cannot be given retroactive effect. The board appealed. We reverse and reinstate the decision of the board.

We need not reach the question whether regulations promulgated by the board pursuant to G. L. c. 30A can be given retroactive effect. Rather, we hold that the board did not apply par. 12 retroactively. As we have stated with respect to statutes, a regulation is not held to have been applied retroactively merely because "it draws on antecedent facts for its operation." *McCarthy* v. *Sheriff of Suffolk County,* 366 Mass. 779, 781 (1975). "It is only where vested substantive rights of the parties have been adversely affected that we can say a statute operates retroactively." *Id.*

Haran has not demonstrated that his vested substantive rights were affected by the board's reliance on par. 12. The regulation does not alter a physician's substantive rights by extending in any way the range of conduct for which a physician may be disciplined in Massachusetts. Rather, par. 12 permits discipline of a physician on the basis of foreign actions only where the foreign grounds of decision are "substantially the same" as the grounds for local discipline set out at 243 Code Mass. Regs. § 1.03 (5) (a) (1)-(11) (1980).

Haran argues that the presence in par. 12 of the modifier "substantially" leaves the regulation so loosely drafted as to permit the board to discipline physicians for conduct proscribed elsewhere, but not in the Commonwealth. A contrary view of

the word "substantially" seems more reasonably to be the intention of the board. The board's use of the principle of collateral estoppel in situations in which there is no significant difference between a sister State's "reasons" for discipline and the grounds that are cognizable in the Commonwealth is clearly proper, as even Haran concedes, to prevent physicians from relitigating questions decided against them in other States. This purpose would fail if the board's regulations had to be so drafted as to account for mere variations in verbal form and not in substantive content in the several States. The use of the adverb "substantially" limits, rather than enlarges, the disciplinary powers of the board to situations in which there is no substantive difference between foreign and local grounds for discipline.

The regulation, as applied to Haran, did not permit the board to use the New York findings to penalize him for conduct not otherwise actionable in Massachusetts. There is no meaningful difference between the "negligence . . . on more than one occasion" of which Haran was found guilty in New York and the requirement of a showing in Massachusetts of "negligence on repeated occasions." [2]

Haran argues that the board's application of par. 12 deprived him of an alleged right to rely on a settled expectation that he would enjoy a "full opportunity" in Massachusetts "to disprove" what was proved in New York. In essence, he asserts a vested substantive right to a second bite at the adjudicative apple. No such right exists. This court has authorized an expanded use of the doctrine of collateral estoppel, in part because we recognize "the strong and oft-stated public policy of limiting each litigant to one opportunity to try his case on the merits." *Home Owners Fed. Sav. & Loan Ass'n* v. *Northwestern Fire & Marine Ins. Co.,* 354 Mass. 448, 455 (1968). We also note

---

[2] Compare the definition of professional misconduct in New York Educ. Law § 6509(2) (McKinney 1985), which, in part, defines professional misconduct as "[p]racticing the profession . . . with . . . negligence or incompetence on more than one occasion," with 243 Code Mass. Regs. § 1.03 (5) (a) (3) (1980), requiring the proof of "negligence on repeated occasions." The findings in New York of twelve occasions of negligence clearly suffice under both standards.

that, when authorizing new usages of collateral estoppel, we have not hesitated in our decisions to apply newly minted rules to the litigants then at bar. See *Massachusetts Property Ins. Underwriting Ass' n* v. *Norrington,* 395 Mass. 751, 753 (1985); *Aetna Casualty & Sur. Co.* v. *Niziolek,* 395 Mass. 737, 745-747 (1985); *Home Owners Fed. Sav. & Loan Ass'n, supra.* We have long been mindful that "[i]t is only statutes . . . relating to remedies and not affecting substantive rights, that commonly are treated as . . . applying to pending actions or causes of action," *Smith* v. *Freedman,* 268 Mass. 38, 40 (1929), quoting *Hanscom* v. *Malden & Melrose Gas Light Co.,* 220 Mass. 1, 3 (1914). Cf. *Hein-Werner Corp.* v. *Jackson Indus.,* 364 Mass. 523, 525 (1974). It is implicit in the rulings cited that, when collateral estoppel is applied, we have always understood the rights affected to be procedural ones and not vested substantive rights. Haran's vested substantive rights were not adversely affected by the board's application of par. 12.[3]

Apart from the issue of retroactivity, Haran maintains that the board violated his right to due process by giving overbroad collateral estoppel effect to the findings of the New York authorities. We disagree. The board's authority to discipline physicians derives from the principle, long recognized in this Commonwealth, that "[t]he right of a physician to toil in his profession . . . with all its sanctity and safeguards is not absolute. It must yield to the paramount right of government to protect the public health by any rational means." *Lawrence* v. *Board of Registration in Medicine,* 239 Mass. 424, 428 (1921). Nonetheless, that right "is both liberty and property, partaking of the nature of each, and is guaranteed by constitutional mandate from unwarrantable interference" in violation of the due process requirements of the Fourteenth Amendment to the United States Constitution. *Id.*

The due process arguments raised by Haran stem from rulings made by the board's hearing officer. Early in the Massachusetts

---

[3] Thus, we need not reach the question whether, if c. 30A does permit retroactive application, such application of par. 12 would violate the canons of due process.

hearings, the hearing officer denied Haran's motion for a "directed verdict" of dismissal. The board's complaint counsel had introduced only the following evidence: Haran's Massachusetts registration; the Massachusetts disciplinary regulations, 243 Code Mass. Regs. § 1.03 (5) (a) (1)-(12) (1980); and records relevant to the New York proceedings against Haran. These last included findings of that State's hearing committee, which in turn included a conclusion that Haran was guilty of "negligence and incompetence on more than one occasion" and separate factual findings of negligence and incompetence on twelve separate occasions. Implicit in the hearing officer's denial of Haran's motion for a "directed verdict" was a ruling that this evidence was sufficient to support a decision by the board to discipline Haran on the basis that New York's revocation of Haran's license established his liability in Massachusetts for discipline.

Haran maintains first that the hearing officer's rulings resulted in a purely mechanical application of the New York findings, which effectively denied him a hearing because he was not allowed to confront "the *sole* 'witness' against him (the New York revocation order)" (emphasis in original). Apparently, Haran argues that the board's use of collateral estoppel offensively pursuant to par. 12 denied him a hearing on the issue of his liability to discipline, which was otherwise guaranteed him by G. L. c. 112, §§ 5 and 61, and G. L. c. 30A, § 10. "In appropriate circumstances, however, the offensive use of collateral estoppel is a generally accepted practice in American courts." *Aetna Casualty & Sur. Co.* v. *Niziolek, supra* at 744. When determining whether the offensive use of collateral estoppel has afforded a defendant due process, "[f]airness is the decisive consideration." *Id.* at 745. See *Parklane Hosiery Co.* v. *Shore,* 439 U.S. 322, 331 (1979) (except where its use would be unfair to a defendant, Federal courts may apply collateral estoppel offensively). To determine the fairness of particular applications of offensive collateral estoppel, courts generally ask whether (1) the party in whose favor the estoppel would operate could have joined the original action, (2) the party against whom it would operate had an adequate incentive

to defend the original action vigorously, (3) "the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant," and (4) "the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result." *Id.* at 329-331. Clearly, the board had no opportunity to join the original New York proceeding; just as clearly, because his license to practice medicine was at stake, Haran had every incentive to litigate the New York action vigorously, and he was in fact represented by counsel at a four-day hearing in New York.[4] It has not been argued that a different result could have been forthcoming in Massachusetts due to differences between the administrative procedures of Massachusetts and New York.[5]

Still, the touchstone of our analysis is fairness in all the circumstances. Haran maintains that it is fundamentally unfair to permit the board to treat New York's revocation of his license as preclusive of litigation without also giving collateral estoppel effect to that State's subsequent determination of what he terms his "present qualification for licensure." The supposed asymmetry is only superficial. Findings of negligence and findings of rehabilitation are both, in a technical sense, "findings

---

[4] On the facts of this case, we are not presented with a situation in which the board applied par. 12 after the initially-revoking sister State had reinstated the physician on grounds which called into question the validity of its revocation of his license in the first instance. In those circumstances, the application of par. 12 would be "inconsistent with . . . previous judgments in favor of the defendant." *Parklane Hosiery Co., supra* at 330. The sole ground for Haran's reinstatement in New York was the finding that he had "adequately demonstrated his rehabilitation." There is no inconsistency. Indeed, because New York's second judgment in Haran's case was based on the assumption that rehabilitation was required prior to reinstatement, this second judgment implicitly affirmed the original findings of negligence.

[5] Haran argues that he might have obtained a different result in Massachusetts had not the hearing officer's rulings foreclosed the possibility of introducing the expert testimony of Dr. James Rhea, a professor of radiology. It does not appear from the record that this evidence was offered at, or excluded from, the initial New York proceedings. We would be indulging in pure speculation if we were to conclude that Haran might have enjoyed outcome-determinative evidentiary procedures in Massachusetts which were not available to him in New York.

of fact," but there the similarity ends. A finding of negligence provides an answer to a narrow factual question — whether, in a particular instance or set of instances, a physician's performance fell below the standard required by law. In contrast, reinstatement of a physician's registration in this Commonwealth, by proof of rehabilitation or otherwise, "will be granted only if the Board determines that doing so would advance the public interest." 243 Code Mass. Regs. § 1.05 (6) (c) (1979). Thus, a finding of rehabilitation and reinstatement requires weighing and balancing a wide range of considerations peculiar to the petitioner in light of the public interest. The former kind of question — whether negligence occurred — is well suited to resolution by collateral estoppel; the latter kind of question is not. By the promulgation of par. 12 in 1980, the board's regulations have treated these two kinds of questions differently, authorizing the use of issue preclusion as to one and not the other.

We cannot say that this regulatory design is unreasonable or unfair. "One of the purposes which lead to the creation of such boards is to have decisions based on evidential facts under the particular statute made by experienced officials with an adequate appreciation of the complexities of the subject which is entrusted to their administration." *Arthurs* v. *Board of Registration in Medicine,* 383 Mass. 299, 311 (1981), quoting *American Broadcasting Cos.* v. *Writers Guild of Am., West, Inc.,* 437 U.S. 411, 433 (1978), and *Republic Aviation Corp.* v. *NLRB,* 324 U.S. 793, 800 (1945). Absent any violation of due process, the board should enjoy wide latitude, not only to decide factual questions on the basis of its members' expertise, but also to decide on that same basis whether the issue of rehabilitation is or is not a question well answered by collateral estoppel. We see no unfairness to Haran in permitting the two questions to be treated differently by the board, and therefore we discern no violation of due process.

Haran also maintains that the board, by the hearing officer's rulings, prevented him from presenting evidence on alleged dissimilarities between the New York and Massachusetts disciplinary standards; he insists that the board should have re-

quired its complaint counsel to demonstrate, by reference to the comparative case law of New York and Massachusetts, that the "negligence" for which he lost his license in New York is legally indistinguishable from the "negligence" that is proscribed in Massachusetts by G. L. c. 112, § 5 (c). The argument is somewhat disingenuous. The question of the similarity of legal standards is not one of evidence and fact, but one of law. The hearing officer could take administrative notice of the pertinent New York law. See G. L. c. 30A, § 11 (5); G. L. c. 233, § 70 (1984 ed.). We need not be detained longer by this argument, as we have answered it in the earlier portion of this opinion.[6]

The board, in accepting the recommendations of the hearing officer on the substantial similarity of the New York and Massachusetts standards, properly fulfilled, under G. L. c. 112, § 5, its "role . . . in the over-all statutory scheme [which] is to take primary responsibility in the regulation of the practice of medicine in the Commonwealth 'in order to promote the public health, welfare, and safety.'" *Levy* v. *Board of Registration & Discipline in Medicine,* 378 Mass. 519, 524 (1979), quoting St. 1975, c. 362, § 3, amending G. L. c. 112, § 5.

Finally, Haran maintains that the board violated his right to due process when it gave collateral estoppel effect to the findings of negligence by the New York authorities without considering whether he had had a full and fair opportunity to litigate that question in the New York proceedings. Admittedly, "[r]edetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in the prior litigation." *Montana* v. *United States,* 440 U.S. 147, 164 n.11 (1979). See *Kremer* v. *Chemical Constr. Corp.,* 456 U.S. 461, 480-481 (1982); *Allen* v. *McCurry,* 449 U.S. 90,

---

[6] Haran also protests that, due to what he sees as a lack of evidence in the form of interpretive case law, the hearing officer's granting of the complaint counsel's motion for partial summary decision was erroneous as matter of law and should be set aside pursuant to G. L. c. 30A, § 14 (7) (e), because that ruling is totally unsupported by substantial evidence. This claim, too, is obviated by our ruling that the hearing officer was correct in finding substantial similarity from a facial reading of the New York documents and record introduced by the complaint counsel.

95 (1980); *Blonder-Tongue Laboratories, Inc.* v. *University of Ill. Found.,* 402 U.S. 313, 328-329 (1971). We note that the transcript of the initial hearing in New York was available to the board's hearing officer. Haran points to nothing in that record which reveals any procedural impropriety.[7]

The order of the single justice is vacated. The case is remanded to the county court for entry of judgment reinstating and affirming the decision of the board.

*So ordered.*

---

[7] Haran seeks to attack the fairness of the New York proceedings, detailing various grounds. None of these issues is briefed adequately. Haran's reference to the memorandum submitted to the single justice does not comply with the requirement of Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975), and Mass. R. A. P. 16 (b), 365 Mass. 860 (1974). Accordingly, these arguments are deemed to be waived. We add that we have reviewed these claims of error and conclude that they are without merit. See *Beaton* v. *Land Court,* 367 Mass. 385, 389-390 (1975).