[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an administrative appeal by the plaintiff, Roger Sylvestre, a chiropractor, from a final decision dated September 22, 1999, issued by the defendant, Connecticut State Board of Chiropractic Examiners ("the Board"), revoking the plaintiff's chiropractic license.
The record shows as follows. In 1992, the plaintiff held chiropractic licenses in Rhode Island, New Hampshire and Connecticut. After an incident in July, 1992, a female patient made a criminal complaint in Rhode Island against the plaintiff alleging he engaged in sexual misconduct during chiropractic treatment. (Return of Record ("ROR"), Volume I, p. 29.) She and one other female patient also reported the incident to the Rhode Island Department of Public Health which resulted in the Rhode Island Chiropractic Board commencing a disciplinary proceeding against the plaintiff. This proceeding resulted on in a consent agreement on July 13, 1992, by which the plaintiff admitted no misconduct but voluntarily surrendered his Rhode Island chiropractic license. (ROR, Volume I, p. 30.) The criminal proceeding was resolved with a plea of nob contendere and a deferred sentence of one year.[1] (ROR, Volume I, p. 29.)
On February 7, 1994, the New Hampshire Board of Chiropractic Examiners commenced its own proceeding upon learning that the plaintiff had voluntarily surrendered his Rhode Island chiropractic license in the face of disciplinary allegations. (ROR, Volume I, p. 25.) The New Hampshire Board's notice alleged that the plaintiff "had engaged in sexual misconduct with two patients (M.O. and K.S.) in violation of [several New Hampshire statutory provisions]." (ROR, Volume I., p. 25.)
New Hampshire conducted a prehearing conference on March 3, 1994, which the plaintiff attended. Subsequently, he received a prehearing order informing him that the hearing date was April 21, 1994, in Concord. The plaintiff did not attend the hearing and made no request for postponement. The New Hampshire Board proceeded in his absence. (ROR, Volume I, p. 26.)[2] The plaintiff had submitted affidavits that were reviewed by the New Hampshire Board. After the hearing, on May 9, 1994, the New Hampshire Board concluded that the actions of the plaintiff constituted "unprofessional and dishonorable conduct" and "willful acts" within the scope of two subsections of a New Hampshire statute.[3] It also concluded that the plaintiff was subject to discipline under a third subsection of this New Hampshire statute authorizing the Board to impose CT Page 1991 discipline when a license has been revoked in another jurisdiction and not reinstated.[4] Therefore, New Hampshire Board revoked the plaintiff's license. (ROR, Volume I, p. 33.) The plaintiff did not appeal this decision.
Subsequently, on March 7, 1998, the Connecticut Department of Public Health gave notice to the plaintiff that he should appear before the Connecticut Board to answer to charges constituting a violation General Statutes § 20-29, regarding sexual misconduct while treating patients M.O. and K.S. in Rhode Island. (ROR, Volume I, pp. 7-9.)
On May 28, and June 11, 1998, the Board held a hearing on the charges. The plaintiff did not appear but was represented by counsel. As evidence of the plaintiff's misconduct, the Department of Public Health introduced an authenticated copy of the Decision and Order of the New Hampshire Chiropractic Board. (ROR, Volume I, pp. 23-33.) The plaintiff, through counsel, introduced four affidavits that had previously been introduced in the New Hampshire proceeding denying that the alleged incidents occurred. (ROR, Volume I, pp. 38-47.)
The Board concluded that the Department of Public Health met its burden of proof by a preponderance of the evidence regarding the allegations in the statement of charges, in that the Board found the plaintiff had engaged in sexual misconduct in treating M.O. and K.S. Under General Statutes §§ 19a-17 and 20-29, the Board consequently revoked the plaintiff's Connecticut chiropractic license effective September 23, 1999. (ROR, Volume I, p. 4.) This appeal followed.[5]
The plaintiff argues that the Board violated General Statutes § 4-177
and due process by giving him inadequate notice of the charges against him. Under Levinson v. Board of Chiropractic Examiners, 211 Conn. 508,535 (1989), the notice given "must advise the party of the facts or conduct alleged to be in violation of the law and must fairly indicate the legal theory under which such facts are claimed to constitute a violation of the law. . . ." (Citations omitted; internal quotation marks omitted.) In determining whether the plaintiff has received adequate notice, the court is to "examine the plaintiffs' claims to determine if there is a variance between the charges made and conclusions reached by the board which is sufficiently substantial to violate the rights of either plaintiff." Id.
The record in this case clearly indicates that there is no variance between the charges made in the notice and the conclusions reached by the Board. The Board charged violations of General Statutes § 20-29 as is conceded by the plaintiff. (ROR, Volume I, pp. 7, 9; Plaintiff's Brief, CT Page 1992 p. 4.) In its Memorandum of Decision, the Board concluded that the plaintiff had engaged in sexual misconduct with M.O. and K.S., thereby violating § 20-29. Further, the Board concluded that based on General Statutes § 19a-17, the Board had the authority, and in fact did, revoke the plaintiff's license.[6]
The record on its face demonstrates no variance between the charges and the conclusions reached by the Board. The plaintiff contests this assertion by pointing to two items. The first is a statement made by the attorney for the Department of Public Health that "the whole point of discipline based on out of state actions, is that . . . this Board is authorized to take action, based on out of state discipline." (ROR, Volume III, p. 14.) Second, the plaintiff points to the introduction of the New Hampshire Board decision. He thus concludes that the Board did not, in fact, decide this case on the basis of a violation of General Statutes § 20-29 but on a reciprocity theory drawn from General Statutes § 19a-17(a)(7). According to the plaintiff, "[t]o charge on one theory and then find on another, about which the plaintiff did not know and against which it was not prepared to defend, is contrary to law and would . . . constitute the taking of property without due process of law. Hart Twin Volvo Corp. v. Commissioner of Motor Vehicles, 165 Conn. 42,48 (1973)." (Plaintiff's Brief, p. 7.)
The record, however, does not support the plaintiff's contentions. The Board rejected the argument on reciprocity made by the attorney for the Department of Public Health by admitting into evidence the four affidavits offered by the plaintiff in his defense. (ROR, Volume III, p. 18.) The New Hampshire Decision and Order was not admitted in and of itself to warrant discipline, but only so that portions of the decision might establish violations of General Statutes § 20-29. (ROR, Volume I, pp. 3-4; Volume II, p. 4; Volume III, p. 12) (admitted to be given the weight it is due.) Thus, the charge was made under General Statutes § 20-29 and the Board's conclusion was also reached that the plaintiff violated § 20-29. There was therefore no statutory or constitutional notice violation here.
The Board's decision must be upheld in its decision "if it is legally supported by the evidence. . . . The credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency, and, if there is evidence. . . . which reasonably supports the decision of the [Board], we cannot disturb the conclusion reached by [it]. . . ." (Citations omitted; internal quotation marks omitted.) Domestic Violence Services of Greater New Haven, Inc. v. FOIC,47 Conn. App. 466, 470 (1998). "[T]he plaintiff must establish that substantial evidence does not exist in the record as a whole to support CT Page 1993 the agency's decision. . . ." (Citation omitted.) Samperi v. InlandWetlands Agency, 226 Conn. 579, 587 (1993).
The evidence to support the Board's decision here is basically the factual findings and conclusions made by the New Hampshire Board. (ROR, Volume I, pp. 3-4.) This appears to the court to be substantial evidence. The plaintiff's second point is that the use of the New Hampshire evidence violated the plaintiff's right to a full hearing before the Connecticut Board where his accusers would testify and he would have the right to cross-examine. He further states that the proceedings in New Hampshire were merely based upon the surrender of his license in Rhode Island, not any factual determination. (Plaintiff's Supplemental Brief, pp. 7-8.)
The case of Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322,99 S.Ct. 645, 58 L.Ed.2d 552 (1979) establishes that the doctrine of collateral estoppel may preclude the taking of evidence before a second tribunal in the discretion of the trier of fact. Such an action should not be allowed "where a plaintiff could easily have joined in the earlier action or where . . . the application of offensive estoppel would be unfair to a defendant . . ." Id., 331.
In Parklane, the Court approved allowing evidence from an injunctive action by the Securities and Exchange Commission to have collateral estoppel effect in a subsequent shareholder's suit. The Court found that the shareholder could not have joined the SEC action. Further, the defendant was not treated unfairly because he had every incentive to litigate in the SEC litigation vigorously, he had had the opportunity to present evidence and to call witnesses, the judgment relied upon was not inconsistent with other previous decisions, and he was not afforded any special procedural opportunities in the second proceeding. ParklaneHosiery Co., Inc. v. Shore, supra, 439 U.S. 332.
Connecticut has recognized that "a decision of an administrative board, acting in a duly authorized judicial capacity, is a prior decision within the rule of res judicata." Corey v. Avco-Lycoming Division,163 Conn. 309, 318 (1972), cert. denied, 409 U.S. 1116, 93 S.Ct. 903,34 L.Ed.2d 699 (1973). Several other jurisdictions have used this same principle in the proceedings before boards revoking licenses. In Haran v.Board of Registration in Medicine, 500 N.E.2d 268, 398 Mass. 571 (Mass. 1986), a physician who had had his license revoked in New York was also disciplined in Massachusetts. He appealed contending that "the [Massachusetts] board violated his right to due process by giving overbroad collateral estoppel effect to the findings of the New York authorities." Id., 272. The court rejected this argument, noting that CT Page 1994 such use of collateral estoppel evidence was generally accepted provided the standards set forth in Parklane were met. Id.
In Falgren v. State of Minnesota, Board of Teaching, 545 N.W.2d 901, 108 Ed. Law Rep. 890 (Minn. 1996), a teacher was proposed for termination for having nonconsensual sexual contact with a student. An arbitrator found after hearing that it was more probable than not that he had engaged in immoral conduct. Subsequently, the school district terminated the teacher. Following the termination, the defendant state teaching board commenced a license disciplinary action alleging that the teacher had engaged in immoral conduct and should have his teaching license revoked. The teaching board's prosecutor moved for summary disposition on the ground that collateral estoppel prohibited the teacher from denying the facts that had been proven in the termination hearing, including the findings on nonconsensual sexual conduct. A hearing officer granted the Board's motion and recommended that the teacher's license be revoked. The Board subsequently adopted the recommendations of the hearing officer. The teacher appealed, claiming that the use of collateral estoppel in the second proceeding was "unfair." This contention, while accepted by appellate court, was rejected by the Supreme Court of Minnesota, finding the Parklane factors satisfied. Id., 906.
In the present case, the Parklane standard was met. The Board could not have joined in the New Hampshire administrative action, as Connecticut law was not at issue in the New Hampshire proceeding. The plaintiff had "every incentive" to defend vigorously against the allegations of misconduct in New Hampshire. His license was at stake and he had by affidavit charged his accusers with inventing the allegations against him. The New Hampshire administrative decision was not inconsistent with any prior decisions. Indeed, it was consistent with the action taken in Rhode Island. Finally, there were no procedural opportunities available to the plaintiff in the action before the Board that were not available before the New Hampshire Board. The plaintiff had an opportunity to appeal the New Hampshire decision[7], but chose not to do so.
The plaintiff opposes the application of collateral estoppel by arguing the New Hampshire proceeding was not "based on a factual determination," but only a resubmission of materials collected in Rhode Island[8], where the plaintiff voluntarily surrendered his license. As indicated above in note 2, the New Hampshire decision might have been reached after presentation of witnesses by the state. If what occurred in New Hampshire was not an evidentiary hearing, should the use of collateral evidence from New Hampshire be barred?[9] The court concludes that in this instance, even assuming that the New Hampshire prosecutor did not call witnesses, it is still appropriate to apply the collateral estoppel CT Page 1995 doctrine.
Parklane itself, in deciding whether the element of fairness had been met, calls attention to the opportunity of the petitioner to oppose the charges against him and present evidence and call witnesses. ParklaneHosiery Co., Inc. v. Shore, supra, 439 U.S. 322. The plaintiff in this case was present when the date of his hearing was set, was represented by designated counsel, and received notice of his hearing date, but chose not to appear. Affidavits previously filed by the plaintiff in the pre-hearing stages of the proceeding were used by the New Hampshire Board along with the facts gathered from the prosecutor's presentation.
In Lamb v. Geovjian, 683 A.2d 731, 165 Vt. 375 (Vt. 1996), a disciplinary action was commenced against a veterinarian. The case settled before the veterinary board by a consent agreement. Then, the plaintiff sought to sue one of the members of the veterinary board for intentional interference with a contract. The court accepted the defendant's claim that collateral estoppel barred an effort by the plaintiff to introduce evidence relitigating the disciplinary proceeding. The issue was whether the plaintiff had had an adequate opportunity to present a complete defense at the veterinary board. Since the plaintiff had chosen to take a settlement after the proceedings commenced, collateral estoppel applied.
Based upon the opportunity the plaintiff here had to give his side of the story and rebut any evidence, oral or documentary, introduced by the prosecutor before the New Hampshire Board, the doctrine of collateral estoppel should apply. There is no unfairness which would violate the Connecticut statutes or due process in doing so. Therefore, there is substantial evidence in the record, consisting of the New Hampshire proceedings, to support the Board's decision. Salmon v. Department ofPublic Health and Addiction Services, 58 Conn. App. 642, 660-61, cert. granted on other grounds, 254 Conn. 926 (2000) (revocation of license of Nurse's Aide).
The last issue raised by the plaintiff is that the preponderance of evidence standard set by the Board is erroneous; he contends that the correct standard is that of clear and convincing evidence, citingStatewide Grievance Committee v. Presnick, 215 Conn. 162 (1990), which is the standard applicable to attorney grievance proceedings. While there is certainly opinion to the contrary in other states, the court concludes that Judge Hodgson's decision in Swiller v. Commissioner of Public Healthand Addiction Services, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 705601 (October 10, 1995, Hodgson, J.) (15 Conn.L.Rptr. 532) is correct in its analysis of the issue).[10]
CT Page 1996 Judge Hodgson found that the executive boards subject to the UAPA may both legally and constitutionally employ the preponderance of evidence test. See also Steadman v. Securities and Exchanged Commission,450 U.S. 91, 101 S.Ct. 999, 67 L.Ed.2d 69 (1981) (where legislature has not imposed a different standard, absent countervailing constitutional restraints, preponderance of evidence is correct standard).
Judge Hodgson also indicates that a logical distinction may be made between the Judicial Branch's decision to adopt a stricter test for attorney discipline and the adoption of a less stringent standard for a chiropractor. There is a basis in the type of harm health professionals might inflict if they err as opposed to an attorney's errors, which might be cured in the legal process. In any event, the Presnick decision is not one made in the context of the UAPA and does not govern the determination of the proper standard.
The appeal of the plaintiff is therefore dismissed.
Henry S. Cohn, Judge