## In the Matter of Stanley Robert Cohen.

Suffolk. May 11, 2001. - August 28, 2001.

Present: Marshall, C.J., Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Attorney at Law,* Disciplinary proceeding, Suspension. *Collateral Estoppel.*

A suspension of an attorney from the practice of law for one year and one day
   was warranted for conduct in which the attorney committed multiple
   disciplinary violations stemming from his representation of clients in a
   series of lawsuits, despite a Federal court order enjoining him from doing
   so, where the record did not support the attorney's contention that the
   Federal court lacked both personal and subject matter jurisdiction over him
   and his clients, and where the doctrine of collateral estoppel barred the at-
   torney from challenging any of the contempt or sanction orders issued
   against him. [13-17]

Information filed in the Supreme Judicial Court for the county
of Suffolk on March 12, 1998.

The case was heard by *Greaney*, J.

*Stanley R. Cohen*, pro se.

*Terence M. Troyer*, Assistant Bar Counsel.

Ireland, J. After having been held in contempt or sanctioned
seven times by four different courts, the respondent, Stanley
Robert Cohen, appeals from a judgment of a single justice of
this court suspending him from the practice of law for one year
and one day. This suspension is a result of multiple disciplinary
violations, stemming from the respondent's representation of
former employees of Cumberland Farms, Inc. (CFI). Specifi-
cally, the respondent prosecuted a series of lawsuits on behalf
of these employees, despite a Federal court order enjoining him
from doing so. He contends that the Federal court had neither
personal nor subject matter jurisdiction over him or his clients,
and all orders holding him in contempt, either issued from that
court or based on that judgment, are therefore invalid. Accord-

ingly, he maintains the resulting discipline is unwarranted. Because we find that (1) the Federal court had both personal and subject matter jurisdiction over the respondent; and (2) the doctrine of collateral estoppel precludes the respondent from raising this defense, we affirm the judgment of the single justice.

1. *Background.* We recite the factual findings of the hearing committee, which were adopted by the appeal panel and the Board of Bar Overseers (board). In 1986, attorneys brought a class action suit, Lance Curley *vs.* Cumberland Farms, Inc., Civil Action No. 86-5057, on behalf of former CFI employees in the United States District Court for the District of New Jersey (Curley court). The employees alleged that the defendant officers and employees of CFI had executed a scheme by which low-level employees were wrongfully accused of stealing from CFI. As part of that scheme, the defendants utilized threats, including that of being arrested, to coerce the employees into signing false confessions admitting guilt, even where the employees denied stealing. CFI allegedly fired the employees, used the coerced confessions to file criminal complaints against the former employees, and thereby obtained orders of "restitution" to which CFI was not entitled.

On January 23, 1991, after the initiation of the Curley class action, the respondent commenced his representation of Cheryl Adams after she had been convicted,[1] when he filed Cheryl Adams *vs.* Cumberland Farms, Inc., Essex Superior Court, No. 91-231.[2] While representing Adams, the respondent became aware of evidence that CFI had engaged in the aforementioned improper scheme against many of its other employees. Over the course of the next several years, the respondent was retained to

[1] Adams, a former CFI employee, had been interrogated and coerced by a CFI loss prevention specialist into confessing in writing that she had stolen money and merchandise. She pleaded guilty to larceny over $250 and was ordered to pay $5,500 in restitution. The respondent successfully obtained a new trial for Adams. Ultimately, she was found not guilty on one complaint and the other complaint was dismissed.

[2] Adams *vs.* Cumberland Farms, Inc., Essex Superior Court, No. 91-231, was removed to the Federal District Court, where on June 17, 1992, relief from the automatic stay was granted, allowing the respondent to name individuals as defendants, but not CFI itself. The case was later remanded to the Essex Superior Court.

represent forty-six former CFI employees, whose cases will be discussed in greater detail below.

On May 1, 1992, CFI filed a petition under Chapter 11 of the Bankruptcy Code, in the United States Bankruptcy Court for the District of Massachusetts. In June, 1992, the respondent filed a class proof of claim for injuries suffered by Adams and ten other former employees (eleven Adams claimants) as a result of CFI's loss prevention practices.[3] Between January, 1991, and September, 1993, the respondent filed three additional lawsuits on behalf of former CFI employees: On January 11, 1993, Ronald Ring vs. Demetrios Haseotes, United States District Court for the District of Massachusetts, No. 93-CV-10051; on May 3, 1993, Richard Waugh vs. Demetrios Haseotes, Suffolk Superior Court, No. 93-2663; and on August 5, 1993, Lenora Spain vs. Demetrios Haseotes, United States District Court for the District of Massachusetts, No. 93-CV-11725. These complaints alleged similar claims as those alleged in the Adams case.

On July 28, 1993, the Curley court gave preliminary approval to a $5.5 million settlement in the Curley class action and conditionally certified a class consisting of all former CFI employees who had been questioned about stealing from CFI between October 15, 1970, and June 22, 1993.[4] The preliminary settlement permitted the class members to opt out of the class action by August 31, 1993, "to the extent such person is not prohibited from requesting exclusion by Order of the Bankruptcy Court." The Curley notice of pendency of class action, dated August 2, 1993, was sent to class members, specifically stating that members could request exclusion from the class only if they either had not filed proofs of claim in the Bankruptcy Court or if the Bankruptcy Court ruled they were not required to participate. The notice further stated that, if members did not file notice of exclusion by the opt-out deadline, and were not excluded, they would be bound by the order. Specifically acknowledging that his clients were Curley class members, the

---

[3]The respondent sought relief from the automatic stay to bring other actions against CFI, which was denied.

[4]The final order changed the end date to May 1, 1992.

respondent moved to intervene in that action. The Curley court denied the motion to intervene on August 11, 1993.[5]

On August 5, 1993, CFI and the original Curley plaintiffs filed a joint motion with the Bankruptcy Court for approval of a "non-opt out settlement class," and for approval of a class settlement of loss prevention claims. The respondent filed an opposition on behalf of, among others, the eleven Adams claimants for whom he had filed the class proof of claim. On August 30, 1993, the Bankruptcy Court ordered all persons who filed proofs of claim in that court to participate in the final settlement of Curley, and further ordered that the claims of all such persons against CFI, its present or past owners, officers, directors, employees, agents, attorneys or insurers, were otherwise "forever barred and discharged."[6]

In contravention of this order, the respondent filed opt-out notices in the Curley class action on behalf of the eleven Adams claimants, as well as an additional twenty other former CFI employees, just prior to the August 31, 1993, opt-out deadline. On September 8, 1993, the Curley court issued a final order and judgment, approving the settlement. It explicitly asserted its jurisdiction over all class members, dismissed pending claims of class members, "forever barred and enjoined" class members from pursuing any loss prevention action against CFI, and retained jurisdiction to enforce performance of the settlement.

As of September 8, 1993, the Adams and Waugh cases had

---

[5]The respondent appealed. On May 19, 1994, the order was affirmed. *Curley* v. *Cumberland Farms, Inc.*, 27 F.3d 556 (3d Cir. 1994).

[6]In other words, if the claimants did not accept the Curley settlement, they would be prevented from pursuing or obtaining any other relief. The respondent appealed from the order to the Federal District Court, which affirmed the decision on June 7, 1995. He then appealed to the United States Court of Appeals for the First Circuit, which also affirmed on May 6, 1996. *Adams* v. *Cumberland Farms, Inc.*, 86 F.3d 1146 (1st Cir. 1996). He subsequently filed a petition for certiorari, which was denied on November 4, 1996. *Adams* v. *Cumberland Farms, Inc.*, 519 U.S. 964 (1996). In those appeals the respondent argued, inter alia, that the Bankruptcy Court lacked subject matter jurisdiction, lacked the authority to adjudicate claims against the nondebtor defendants, and improperly used the class action settlement as a vehicle for estimating and discharging his client's claims. These arguments were all rejected.

been consolidated in the Superior Court[7] and, like the Spain case, were pending. The Federal District Court had dismissed the Ring case in April, 1993. Almost immediately following the approval of the Curley settlement, the respondent continued to pursue these cases, and commenced new actions,[8] thus violating the orders issued by both the Bankruptcy Court and the Curley court. He was held in contempt or otherwise sanctioned on (1) April 21, 1994, in the Bankruptcy Court[9]; (2) May 2, 1994, in the United States District Court for the District of New Jersey[10]; (3) July 12, 1995, in Suffolk Superior Court[11]; (4) July 19, 1995, in the United States District Court for the District of New Jersey[12]; (5) August 28, 1995, in the United States District

---

[7]A court order stayed these proceedings on December 31, 1993.

[8]On February 7, 1994, the respondent filed Cheryl Adams vs. Kevin Burke, Suffolk Superior Court No. 94-627, and Cheryl Adams vs. Kevin Burke, United States District Court for the District of Massachusetts, No. 94-CV-10229. On November 25, 1994, he filed Eric Judson vs. Cumberland Farms, Inc., Norfolk Superior Court, No. 94-2036, and on June 5, 1995, he filed Laetitia Salvatore vs. Cumberland Farms, Inc., United States District Court for the District of Massachusetts, No. 95-CV-11170.

[9]The Bankruptcy Court held the respondent in contempt for knowingly violating the automatic stay vis-à-vis his attempt to add CFI as a defendant in Lenora Spain vs. Demetrios Haseotes, United States District Court for the District of Massachusetts, No. 93-CV-11725. The stay specifically prohibited him from taking this action. He appealed, but the record does not indicate whether the appeal has been decided.

[10]Exercising its continuing jurisdiction to enforce the settlement judgment and order, the Curley court held the respondent in civil contempt and enjoined him from taking any further actions to prosecute any claims against CFI. It also enjoined the Massachusetts Superior Court and the United States District Court for the District of Massachusetts from permitting further prosecution of the 1994 Adams cases (see note 8, supra). Both the injunctive relief and the contempt order were summarily affirmed in all respects. Curley v. Cumberland Farms Dairy, Inc., 47 F.3d 1160 (3d Cir. 1995).

[11]The court ordered the respondent and his client, Cheryl Adams, to pay $34,661.56 in attorney's fees and costs on the defendants' motion to dismiss when the respondent persisted in prosecuting Suffolk Superior Court No. 94-627. His appeal was dismissed for lack of standing and a single justice of the Appeals Court affirmed the sanction.

[12]The Curley court again held the respondent in contempt for continuing to prosecute the Waugh and Spain cases, and the three Adams cases, and for initiating the Judson and Salvatore cases. The Curley court ordered the respondent to pay the defendants' costs and attorney's fees, and enjoined him from continuing to prosecute class members' claims in the Judson and Salvatore cases. Following the issuance of the second contempt order from the Cur-

Court for the District of Massachusetts[13]; and (6) March 5, 1996, in the United States District Court for the District of Massachusetts[14]; and (7) December 15, 1997, in the United States District Court for the District of Massachusetts.[15]

In light of these events, on February 2, 1998, bar counsel filed a petition for discipline with the board, alleging multiple violations of (1) S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (5), as appearing in 382 Mass. 769 (1981) (conduct prejudicial to the administration of justice); (2) S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (6), as appearing in 382 Mass. 769 (1981) (conduct that adversely reflects on fitness to practice law); and (3) S.J.C. Rule 3:07, Canon 7, DR 7-102 (A) (2), as appearing in 382 Mass. 785 (1981) (knowing advancement of a claim unwarranted under current law).

When the respondent failed to answer timely, bar counsel petitioned a single justice of this court for an administrative suspension pursuant to S.J.C. Rule 4:01, § 8 (3), as appearing in 425 Mass. 1309 (1997), and S.J.C. Rule 4:01, § 3 (2), as appearing in 425 Mass. 1303 (1997). The single justice entered an order of administrative suspension. The respondent then filed a motion for relief from the order, citing procedural issues. The single justice concluded that the administrative suspension suf-

---

ley court, the Suffolk Superior Court dismissed the Judson and two Adams cases. The respondent appealed from the dismissals. The Appeals Court consolidated and dismissed the appeals. The respondent unsuccessfully sought further review from both this court and the United States Supreme Court. The Federal Adams case was dismissed on April 26, 1995, and the Spain case was dismissed on May 2, 1995. The respondent appealed from both dismissals to the United States Court of Appeals for the First Circuit, which dismissed the appeals, ruling that "[b]ecause they had a full opportunity to litigate the questions concerning their membership in the Curley class, they may not raise it again." With respect to the Spain case, the respondent filed a petition for certiorari, which was denied. *Spain* v. *Haseotes*, 522 U.S. 997 (1997).

[13]After dismissing the Spain, Adams, and Salvatore cases, the United States District Court for the District of Massachusetts allowed the defendants' motion for sanctions, fees, and costs. The respondent was ordered to pay CFI $75,919.48.

[14]When the respondent failed to pay CFI pursuant to the August 28, 1995, order, he was held in contempt, and the court renewed its order on February 28, 1996.

[15]In response to the respondent's continued flouting of the order to pay CFI $75,919.48 in sanctions, fees, and costs, the court issued a second contempt order. Still, the respondent did not pay, and a warrant was issued for his arrest.

fered from procedural problems, but that the problems could be cured if bar counsel filed a petition for temporary suspension pursuant to S.J.C. Rule 4:01, § 12A, 425 Mass. 1315 (1997). The single justice then deferred any action on the respondent's motion until bar counsel had an opportunity to file such a petition.

Bar counsel then filed a petition for temporary suspension. The respondent answered the petition and filed a motion for dismissal. After a hearing, the single justice issued an order temporarily suspending the respondent pending further proceedings before the board and further order of the court. The respondent filed a notice of appeal. An information and record of proceedings were then filed with this court pursuant to S.J.C. Rule 4:01, § 8 (4), as appearing in 425 Mass. 1309 (1997).

After holding hearings on the petition for discipline, the hearing committee issued a report, finding that respondent had engaged in multiple violations of DR 1-102 (A) (5) and (6), and DR 7-102 (A) (2), and recommending that he be suspended from the practice of law for one year and one day.

The respondent appealed from the hearing committee's findings to an appeal panel of the board (appeal panel). In its report, the appeal panel adopted the hearing committee's findings and recommended a suspension of one year and one day. An information was filed in the county court. Following a hearing, on June 30, 2000, the single justice entered an order suspending the respondent from the practice of law for one year and one day. The respondent did not file a notice of appeal to the full court.

2. *Discussion.* Although the respondent did not file a notice of appeal after the entry of term suspension, he did file such notice after the entry of judgment of temporary suspension. Because the arguments of bar counsel and the respondent mirror those made before the single justice, appeal panel of the board, and hearing committee, we reach the merits of the appeal, despite the technical filing error. *Swampscott Educ. Ass'n* v. *Swampscott*, 391 Mass. 864, 865-866 (1984) ("a decision on the merits should not be avoided on the technicality that a premature notice of appeal was or may have been filed, where

no other party has been prejudiced by that fact"). See *Dimino* v. *Secretary of the Commonwealth*, 427 Mass. 704, 708 (1998).

In a postargument letter, the respondent conceded that, "[i]f any of my clients were members of the Curley class then I deserved to have my license suspended." He maintains that his clients were not Curley class members, and thus, he was not in violation of the orders. We disagree.

The respondent argues that the Curley court lacked both personal and subject matter jurisdiction over him and his clients. Specifically, he claims that the court lacked jurisdiction over his clients because they allegedly were never parties to, or alternatively, opted out of, the Curley class action. The record does not support this contention. Moreover, the respondent is collaterally estopped from raising this challenge — or any other — to the contempt and sanction orders on which the term suspension is based.

Initially, as has been repeatedly found by various courts over the course of these lengthy proceedings, we conclude that the respondent and his clients were subject to the Curley court's jurisdiction. Curley was a class action. Thus, the Curley court had personal and subject matter jurisdiction over all members of the defined class who had not exercised their right to opt out. See *Phillips Petroleum Co.* v. *Shutts*, 472 U.S. 797, 811 (1985) ("a forum State may exercise jurisdiction over the claim of an absent class-action plaintiff even though that plaintiff may not possess the minimum contacts with the forum which would support personal jurisdiction over a defendant" if forum State provides notice and opportunity to opt out). See also Fed. R. Civ. P. 23 (setting forth circumstances in which class action may be maintained).

The majority of the respondent's clients were class members who did not validly opt out of the Curley class action. In particular, the core group of named plaintiffs in the actions filed by the respondent belong to the eleven Adams claimants group.[16] Each of these plaintiffs filed a proof of claim with the

---

[16]In addition to the eleven Adams claimants, the respondent also represented fifteen other clients who were either members of the defined Curley class who did not file exclusion notices, or members of the class who had failed to file timely exclusion notices. Each of these clients was named as a plaintiff in at

Bankruptcy Court in the CFI bankruptcy proceeding. Consequently, each of these plaintiffs was also subject to the Bankruptcy Court's order approving a mandatory settlement class for those individuals that filed proofs of claim in the Curley action. Thus, these plaintiffs were required to participate in the Curley settlement and could not choose to opt out.[17] Accordingly, as the respondent himself acknowledged in his motion to intervene, his clients were members of the Curley class, and were consequently subject to the jurisdiction of the Curley court.

Bar counsel argues that the doctrine of collateral estoppel bars the respondent from challenging any of the contempt or sanction orders against him. He maintains that the respondent has been "found in contempt or otherwise sanctioned seven times [by four different courts]." He further contends that these orders have become final and are not open to collateral attack by the respondent on jurisdictional or any other grounds. We agree.

We have said that "the offensive use of collateral estoppel is appropriate in bar disciplinary proceedings." *Bar Counsel* v. *Bar Overseers*, 420 Mass. 6, 10-11 (1995) (relitigation "would not comport with the judicial goals of finality, efficiency, consistency, and fairness"). The offensive use of collateral estoppel "occurs when a plaintiff seeks to prevent a defendant from litigating issues which the defendant has previously litigated unsuccessfully in an action against another party." *Id.* at 9. For the doctrine to apply, there must be "an identity of issues, a finding adverse to the party against whom it is being asserted, and a judgment by a court or tribunal of competent jurisdiction." *Miles* v. *Aetna Cas. & Sur. Co.*, 412 Mass. 424, 427 (1992), citing *Martin* v. *Ring*, 401 Mass. 59, 61 (1987). A defendant must also have a "full and fair opportunity to litigate the issue in the first action." Restatement (Second) of Judgments § 29 (1982). See *Fireside Motors, Inc.* v. *Nissan Motor*

least one of the actions the respondent filed. The status of the remaining twenty clients who did properly opt out of the class is not relevant to our decision.

[17]Despite the Bankruptcy Court's order, the respondent filed opt out notices on behalf of these clients. Given the court order, these notices were invalid on their face.

*Corp. in U.S.A.*, 395 Mass. 366, 373 (1985), quoting *Fidler* v. *E.M. Parker Co.*, 394 Mass. 534, 541 (1985).

Here, bar counsel is seeking the imposition of a suspension against the respondent based on the same conduct that was at issue in each of the seven contempt and sanction orders, six of which resulted in final judgments.[18] Thus, the same issue has been decided adversely to the respondent by three courts of competent jurisdiction. Moreover, before a variety of courts, the respondent has asserted repeatedly that the Curley court lacked jurisdiction over him and his clients. As stated above, the Curley court itself rejected this argument twice. The United States Court of Appeals for the Third Circuit agreed with the Curley court's findings.[19] Thus, the respondent has had a full and fair opportunity to challenge the validity of the Curley contempt orders, both at the trial and appellate levels, to no avail.

The same is true of the other contempt and sanction orders issued against the respondent. As bar counsel points out, the respondent has been sanctioned seven times by four different courts. The record indicates that the respondent had an opportunity to challenge each of these decisions, both at the trial and appellate levels. The respondent does not contend that he was unable to participate in any of these actions; rather, he simply relies on the premise that these decisions were "erroneous" based on his argument that the Curley court lacked jurisdiction over him and his clients, and thus, he was warranted in repeatedly violating the contempt orders. As discussed above, the respondent's assertion that the Curley court lacked jurisdiction over him is simply incorrect.[20]

With these initial requirements met, we turn to "[f]airness," which is "the decisive consideration" in determining whether to apply offensive collateral estoppel. *Aetna Cas. & Sur. Co.* v.

---

[18]It does not appear that his appeal of the Bankruptcy Court order has yet resulted in a final decision. See note 9, *supra.*

[19]The same jurisdictional argument was rejected in the original Adams, the Judson, and the Spain cases.

[20]Even if the orders had been erroneous, such error would not have authorized him to defy the orders. See *Nickerson* v. *Dowd*, 342 Mass. 462, 467 (1961) (one cannot contest validity of temporary restraining order in contempt proceeding). Thus, this argument does nothing to further the respondent's cause.

*Niziolek*, 395 Mass. 737, 745 (1985). See *Parklane Hosiery Co.* v. *Shore*, 439 U.S. 322, 331 (1979); *Haran* v. *Board of Registration in Medicine*, 398 Mass. 571, 579 (1986). In making this determination, "courts generally ask whether (1) the party in whose favor the estoppel would operate could have joined the original action, (2) the party against whom it would operate had an adequate incentive to defend the original action vigorously, (3) 'the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant,' and (4) 'the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result.' " *Id.* at 577-578, quoting *Parklane Hosiery Co.* v. *Shore, supra* at 329-331. Here, the circumstances lend themselves to a fair application of offensive collateral estoppel. First, because the board was not involved in the initial Curley litigation, it had neither a reason, nor an opportunity to join the contempt proceedings. Second, with his professional reputation at stake and confronting severely detrimental consequences from the contempt orders and sanctions, the respondent had every incentive to defend vigorously against the contempt orders and sanctions. Third, there is no possibility that the judgments upon which bar counsel relies are inconsistent with previous judgments in favor of the respondent, particularly since each and every one of these previous judgments have been unpropitious to the respondent. Furthermore, it has not been argued, nor do we conclude, that a different result could have been forthcoming in this case due to new procedural opportunities afforded the respondent. As such, the application of offensive collateral estoppel is fair, and it bars the respondent from challenging the contempt orders and sanctions on jurisdictional, or any other, grounds. Given the respondent's refusal to cease his pursuit of further claims in contravention of various court orders, as well as his acknowledgment that if his clients were members of the Curley class, the sanctions imposed on him were appropriate, the order of the single justice was proper.[21]

*Order affirmed.*

---

[21]The respondent's additional claims, among others, that (1) the injunctive orders issued by the Curley court violated Fed. R. Civ. P. 65 (d); (2) the Anti-

Injunction Act, 28 U.S.C. § 2283 (1994), precluded the Curley court from enjoining proceedings in the Superior Court cases; (3) it was unlawful and unjust for a United States District Court for the District of New Jersey to adjudicate the claims of individuals who were from New England and sought justice in Massachusetts courts; and (4) the Bankruptcy Court's contempt order was unjustified and never took effect, are without merit.