## IN THE MATTER OF DAVID P. BRAUER.

Suffolk. April 7, 2008. - July 28, 2008.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, CORDY, & BOTSFORD, JJ.

*Attorney at Law,* Disciplinary proceeding, Suspension. *Estoppel. Collateral Estoppel. Board of Bar Overseers. Due Process of Law,* Continuance. *Conversion.*

Discussion of the standard applied by this court in reviewing bar discipline proceedings. [65-66]

In an attorney disciplinary proceeding alleging that the respondent had converted funds belonging to a third party that he had held in escrow for a client, the chairman of the Board of Bar Overseers did not err in applying the doctrine of collateral estoppel to preclude the respondent from challenging factual allegations in the petition for discipline, where the allegations had been established adversely to the respondent and affirmed on appeal in a prior civil action brought by the third party against the respondent in Superior Court [66-68]; further, the chairman was not required to review the entire record of the prior civil action before determining whether preclusion was warranted [68-69], and the respondent failed to demonstrate that the application of estoppel principles was unfair in light of the allegedly ineffective assistance of counsel that he had received during the civil litigation, where the respondent had ample opportunity to raise those concerns in his appeal from the final judgment and failed to do so, and never filed a motion for a new trial on the basis of ineffective assistance [69-71].

A member of the Board of Bar Overseers, by having decided a prehearing motion adversely to a respondent, was not thereby precluded from serving as a special hearing officer in subsequent disciplinary proceedings against the same respondent. [71-72]

A hearing officer of the Board of Bar Overseers did not abuse his discretion in denying a respondent's second request for a continuance of his disciplinary proceeding, where the motion, brought by respondent's counsel on the eve of the hearing, offered no rationale for the attorney's delay, and where all parties had participated in the establishment of the hearing date. [72-74]

The appropriate sanction for an attorney who had misappropriated third-party funds while acting within the practice of law was an indefinite suspension. [74-76]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on March 21, 2007.

The case was reported by *Cowin,* J.

*Kevin M. Keating* for the respondent.

*Roger Geller,* Assistant Bar Counsel.

Spina, J. The present bar discipline matter is before us on a reservation and report, without decision, from a single justice of this court. The Board of Bar Overseers (board) has recommended that the respondent, David P. Brauer, be indefinitely suspended from the practice of law for, among other things, the conversion of funds held in escrow. For the reasons that follow, we conclude that an indefinite suspension is the appropriate disciplinary sanction.

1. *Background.* The following facts are drawn from the findings of a special hearing officer, which were adopted by an appeal panel of the board and then by the full board.[1] We have supplemented the hearing officer's findings with undisputed facts contained in the record on appeal.

The respondent was admitted to the practice of law in this Commonwealth on December 15, 1986. At all relevant times, he was a shareholder in Brauer & Brauer, P.C., a legal professional corporation. The respondent's father, formerly an attorney,[2] was the other shareholder in Brauer & Brauer, in addition to being the sole shareholder, officer, and director of Decnos Financial Group, Inc. (Decnos), a Delaware corporation providing business investment and consulting services.

The respondent represented Commonwealth Snack Company (Commonwealth Snack) in a lawsuit brought by Edward Dewey (Dewey) to collect on a note that Commonwealth Snack had given to Dewey in exchange for Dewey's stock in another corporation (Dewey lawsuit). While the respondent was representing Commonwealth Snack, Grand Pacific Finance Corporation (GPFC) entered into a commercial loan transaction with Commonwealth Snack in which GPFC agreed to lend it $5 million. As part of the loan agreement, Commonwealth Snack and GPFC

---

[1]On May 23, 2005, the chairman of the Board of Bar Overseers issued an order pertaining to issue preclusion, setting forth the specific allegations in the petition for discipline that would be deemed conclusively admitted for purposes of these disciplinary proceedings. The factual findings of the special hearing officer were taken from this preclusion order, which will be discussed *infra* at 63-64.

[2]The respondent's father was admitted to the practice of law in this Commonwealth on December 18, 1962. On June 23, 1998, the Supreme Judicial Court accepted his affidavit of resignation pursuant to S.J.C. Rule 4:01, § 15, as appearing in 425 Mass. 1319 (1997), as a disciplinary sanction. See *Matter of Brauer*, 14 Mass. Att'y Discipline Rep. 93, 94 (1998).

also entered into a depository agreement pursuant to which all funds advanced by GPFC were to be held in an account at the China Trust Bank of New York. The depository agreement provided that the funds advanced to Commonwealth Snack remained GPFC's "sole and exclusive property" and could not be released to Commonwealth Snack except on GPFC's specific direction. GPFC required Commonwealth Snack to resolve the Dewey lawsuit before it would advance any funds under the loan agreement. The respondent was aware of the terms and conditions of the depository agreement between Commonwealth Snack and GPFC.

In the late summer of 1996, the respondent told Commonwealth Snack that the Dewey lawsuit could be settled for a $750,000 payment to Dewey, and he asked Commonwealth Snack for this sum to complete the settlement. On August 21, 1996, the chief executive officer of Commonwealth Snack, Walter Quednau, wrote to GPFC, requesting $750,000 to pay Dewey. He asked GPFC to wire the funds to the Brauer & Brauer client group account, from which the funds then could be wired to Dewey's designated account. Quednau's letter also stated that "[a]ny variance from the $750,000 wired funds and the Dewey settlement will be returned wire transfer to [GPFC] within 24 hours . . . ." Quednau sent the respondent a copy of his August 21 letter to GPFC. The respondent read the letter, did not object to its contents, and understood that he would be receiving $750,000 as escrowee for the settlement of the Dewey lawsuit.

In response to Quednau's request, GPFC agreed to lend Commonwealth Snack $750,000 to pay the Dewey settlement.[3] On August 22, 1996, after receiving instructions from GPFC, the China Trust Bank wired $750,000 to the Brauer & Brauer client group account for the sole purpose of funding the Dewey settlement. The respondent was aware of the receipt of these funds in his client account, and he knew that they were to be held in escrow to pay the Dewey settlement. The Dewey lawsuit did not settle promptly after GPFC wired the funds to the respondent's client account. On August 30, 1996, GPFC sent a letter by fac-

---

[3]It is unclear from the record whether the $750,000 loaned to Commonwealth Snack from GPFC was an advance on the $5 million that GPFC originally had agreed to loan to Commonwealth Snack or whether it was entirely separate.

simile transmission to Quednau, asking for the immediate return of the $750,000. The same letter was sent by facsimile transmission to the respondent, who received and read it that day.

By August 30, 1996, the respondent was aware that Commonwealth Snack was in serious financial trouble. At that time, it owed Brauer & Brauer fees of $19,628.90 for legal and consulting services provided by the respondent and his father. The respondent also knew that Decnos was owed approximately $77,000 for consulting work that his father had performed for Commonwealth Snack. Both the respondent and his father were concerned about Commonwealth Snack's ability to pay these outstanding fees.

Around this same time, the respondent told his father about GPFC's request for the return of the escrowed funds, and they began to consider ways that they could use the $750,000 to satisfy Commonwealth Snack's obligations to Brauer & Brauer and to Decnos. Despite his understanding that GPFC's request for the return of the $750,000 was genuine and consistent with the terms under which the funds had been wired into the Brauer & Brauer client group account, the respondent informed Quednau that he would not return the escrowed funds to GPFC unless and until Quednau sent him written instructions to do so. The respondent's purpose in demanding written instructions was intentionally to delay the return of the funds. On September 3, 1996, Quednau sent a letter by facsimile transmission to Brauer & Brauer, stating, "Effective immediately wire the $750,000 for the Dewey escrow to GPFC per Friday's instructions." The respondent received the letter on the same day and intentionally ignored the instructions so as to give Decnos time to sue Commonwealth Snack and obtain an attachment for the money that Decnos was owed.

On September 4, 1996, a lawyer retained by the respondent's father filed a complaint in the Dedham Division of the District Court Department (Dedham District Court) on behalf of Decnos against Commonwealth Snack and against Brauer & Brauer, as trustee. Decnos sought to recover the $77,000 allegedly owed by Commonwealth Snack. Filed along with the complaint was a motion for an ex parte trustee process attachment.[4] On September

[4]Attachment by trustee process is made for the purpose of "holding property

5, 1996, the attorney for Decnos filed a motion for a temporary restraining order to prevent Brauer & Brauer from disbursing $77,000 of the $750,000 that the law firm was holding "for the benefit of Commonwealth Snack." A judge in the Dedham District Court ordered Brauer & Brauer to place $77,000 of the escrowed funds in a separate account, pending further action by the court. On receipt of this order, the respondent neither notified the court that the funds he was holding did not belong to Commonwealth Snack, nor did he challenge the order. Instead, that same day, the respondent transferred $77,000 of GPFC's escrowed funds from the Brauer & Brauer client group account to a separate escrow account for Decnos.

The respondent had no right to use GPFC's escrowed funds to pay past or anticipated future legal and consulting fees owed by Commonwealth Snack to Brauer & Brauer. Nonetheless, the respondent transferred an additional $23,000 of GPFC's escrowed funds to a separate escrow account for Brauer & Brauer to pay $19,628.90 in fees and expenses that Commonwealth Snack owed to the law firm for past work, plus another $3,371.10 to cover anticipated fees for future work. On September 5, 1996, the respondent wired the remaining $650,000 of GPFC's escrowed funds to the China Trust Bank, without explaining the $100,000 shortfall. The next day, the respondent notified GPFC by letter that he had placed $77,000 of its escrowed funds in a separate escrow account pursuant to a court order, and that he had put an additional $23,000 of its escrowed funds in a different escrow account for the payment of legal fees that Commonwealth Snack owed to Brauer & Brauer.

On September 27, 1996, Decnos filed a motion in the Dedham District Court to default Commonwealth Snack for failure to file an answer to Decnos's complaint. A default judgment was entered on November 12, 1996, in the amount of $78,172.09. Again, the respondent did not inform the court about the circumstances in which Brauer & Brauer had received the escrowed funds, or about the fact that the funds were the property of GPFC, not Commonwealth Snack. On November 27, 1996, the respondent's father delivered the execution to the respondent.

of another against his will to answer for a debt due the plaintiff." *Kolda* v. *National-Ben Franklin Fire Ins. Co.*, 290 Mass. 182, 187 (1935).

That same day, the respondent transferred $77,000, plus interest, from the escrow account to Decnos.

GPFC commenced an action in the Superior Court against the respondent, Brauer & Brauer, and Decnos to recover the $100,000 that had not been returned on September 5, 1996. In March, 2000, judgment was entered in favor of GPFC on its conversion claim, and that determination was affirmed on appeal.[5] See *Grand Pac. Fin. Corp.* v. *Brauer*, 57 Mass. App. Ct. 407 (2003).

On March 26, 2004, bar counsel commenced formal proceedings against the respondent by filing with the board a petition for discipline, alleging that the respondent had engaged in misconduct by converting funds belonging to GPFC; colluding with his father in a deceptive scheme to violate the terms of the escrow agreement between GPFC and Commonwealth Snack; disclosing confidential information for the benefit of Decnos and to the disadvantage of Commonwealth Snack; delaying the return of the escrowed funds so that his father could secure an attachment; representing Commonwealth Snack when his personal and professional interests affected his judgment on behalf of his client and without obtaining Commonwealth Snack's

---

[5]In its complaint, GPFC asserted claims for fraud, conversion, and violation of G. L. c. 93A. With respect to the actions of the respondent, the trial judge concluded that, as to the claim for fraud, there was no showing of any misrepresentation of fact by the respondent to GPFC. As to the claim for conversion, the judge concluded that Brauer & Brauer was the escrow agent for GPFC and Commonwealth Snack, and that it held the escrowed funds in accordance with the terms of the agreement between those two parties. It followed, therefore, that the respondent was not entitled to use the escrowed funds to pay legal and consulting fees owed by Commonwealth Snack. The judge stated that when the respondent took $77,000 of the escrowed funds, he converted GPFC's property. The judge further stated that the respondent breached his fiduciary duty to GPFC by failing to notify it of the action brought by Decnos against Commonwealth Snack, by failing to apprise the Dedham District Court of the true facts surrounding the escrowed funds, and by delaying the return of the funds to the China Trust Bank. As to the claim alleging violation of G. L. c. 93A, the judge concluded that the respondent's actions did not constitute "trade or business" for purposes of c. 93A. On appeal, the Appeals Court affirmed the dismissal of the fraud claim against the respondent, affirmed the conversion judgment, and reversed the dismissal of GPFC's claim under c. 93A. See *Grand Pac. Fin. Corp.* v. *Brauer*, 57 Mass. App. Ct. 407, 409 (2003). The parties' applications for further appellate review were denied. See *Grand Pac. Fin. Corp.* v. *Brauer*, 439 Mass. 1108 (2003).

informed consent to the conflicts of interest; and failing to inform the Dedham District Court that the escrowed funds did not belong to Commonwealth Snack but, instead, were the property of GPFC. The respondent denied the substantive allegations of misconduct.

On June 22, 2004, bar counsel filed a motion to preclude the respondent from contesting the factual allegations of the petition for discipline on the ground that those allegations already had been fully litigated, determined, and affirmed on appeal in the prior civil action brought by GPFC in the Superior Court.[6] The respondent opposed the motion, contending that it would be fundamentally unfair to apply the principles of offensive collateral estoppel in the circumstances of his case. On February 15, 2005, the motion to preclude was allowed by the board's chairman, and after the allowance of a request for reconsideration by the respondent, it was affirmed.[7] On May 23, 2005, the board's chairman issued an order (the preclusion order) setting forth the specific allegations in the petition for discipline that would be deemed conclusively admitted for purposes of the disciplinary proceedings.[8] The respondent's motion to strike or amend

[6] In the motion to preclude, bar counsel requested that the issues left open for adjudication in these disciplinary proceedings be limited to "whether the respondent's conduct constituted violations of the disciplinary rules as charged, whether there [were] any circumstances in aggravation or mitigation of his misconduct, and what sanction, if any[,] should be imposed on the respondent."

[7] In the board chairman's memorandum and order allowing bar counsel's motion to preclude, the chairman directed bar counsel to submit a proposed order identifying specific factual allegations in the petition for discipline that bar counsel deemed to have been established, fully litigated, and essential to the judgment in the Superior Court. The respondent neither objected to the form of the proposed order submitted by bar counsel nor suggested any alternative wording.

[8] Virtually all of the factual allegations in the petition for discipline were deemed to be conclusively established, except for paragraph 17. Paragraph 17 of the petition provided: "The respondent's business, professional, personal, and financial interests affected his professional judgment on behalf of Commonwealth Snack. The respondent did not make full disclosure of these conflicting interests to Commonwealth Snack and did not obtain the consent of Commonwealth Snack to his conflicting interests." In the preclusion order, the board's chairman stated that the focus of the disciplinary hearings would be on paragraphs 17 and 38 of the petition, and on the conclusions to be drawn or inferred from the established facts relative to the specific disciplinary rules that bar counsel claimed the respondent had violated, as set forth in paragraphs 36-40 of the petition.

that order was denied.[9] On October 17, 2005, the respondent filed another motion for reconsideration of the preclusion order, and it was taken under advisement.[10]

Disciplinary hearings began on October 19, 2005, before the board's chairman, who was sitting as a special hearing officer (hearing officer). The respondent, who had been notified of the proceedings, declined to appear, no exhibits were offered, and no witnesses were called. Bar counsel relied on the facts conclusively deemed established in the preclusion order of May 23, 2005, and rested his case. The respondent appeared on October 21, 2005, the second and final day of the hearings, but he presented no testimony. Counsel for the respondent announced that the hearings had concluded, and that his appearance was limited to his October 17 motion for reconsideration of the preclusion order. On November 8, 2005, the hearing officer denied the respondent's October 17 motion for reconsideration of the preclusion order.

On February 13, 2006, the hearing officer issued a report setting forth his findings of fact, conclusions of law, and recommendation for discipline. He found that the respondent had violated his fiduciary duty as an escrow agent by intentionally converting escrowed funds for the satisfaction of Commonwealth Snack's indebtedness to Brauer & Brauer and to Decnos and, by so doing, had deprived GPFC of the use of such funds. The hearing officer stated that the respondent's facilitation of "fraud" on the Dedham District Court by failing to inform the court that the escrowed funds belonged to GPFC, not Commonwealth Snack, thereby subjecting such funds to attachment, was particularly egregious. Further, the hearing officer continued, the respondent's deceptive conduct violated duties to three different entities:

[9]In his motion to strike or amend the preclusion order, the respondent acknowledged that he did not object to the proposed order submitted by bar counsel. See note 6, *supra*. Nonetheless, the respondent took issue with it by claiming that no time lines were established for him to reply to the proposed order and no hearing was held on the matter.

[10]In support of his motion for reconsideration, the respondent offered, inter alia, an expert affidavit from Michael B. Keating, a partner in the Boston law firm Foley Hoag LLP, that raised questions whether the respondent had been represented effectively in the underlying civil litigation. The respondent did not explain why he had not retained Attorney Keating in sufficient time to present fully developed live testimony.

(1) his client, Commonwealth Snack; (2) GPFC, to which he owed fiduciary duties as escrow agent; and (3) the Dedham District Court. Finally, the hearing officer found that the respondent had acted in disregard of an improper conflict of interest when, notwithstanding explicit instructions from Commonwealth Snack, he failed to return the entire $750,000 in escrowed funds to GPFC. The hearing officer concluded that the respondent's actions violated S.J.C. Rule 3:07, Canon 9, DR 9-102 (A), as appearing in 419 Mass. 1303 (1995) (lawyer shall maintain trust funds separate from lawyer's funds); S.J.C. Rule 3:07, Canon 9, DR 9-102 (B), as appearing in 419 Mass. 1303 (1995) (lawyer shall notify client of receipt of funds, maintain complete records of funds, and promptly deliver funds to client as requested); S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (4), as appearing in 382 Mass. 769 (1981) (lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation) (two counts); S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (5), as appearing in 382 Mass. 769 (1981) (lawyer shall not engage in conduct prejudicial to administration of justice); and S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (6), as appearing in 382 Mass. 769 (1981) (lawyer shall not engage in conduct adversely reflecting on fitness to practice law) (two counts).[11] The hearing officer further concluded that the respondent's continued representation of Commonwealth Snack when his judgment was impaired by his own business and personal interests, and his failure to obtain Commonwealth Snack's informed consent to such continued representation, violated S.J.C. Rule 3:07, Canon 5, DR 5-101 (A), as appearing in 382 Mass. 779 (1981) (lawyer shall not accept employment when interests of lawyer may impair his independent judgment, except with consent of client after full disclosure).

The hearing officer then considered whether there were any aggravating or mitigating factors that should be evaluated with respect to the imposition of disciplinary sanctions. He concluded that there were none. The hearing officer recommended that the

[11]The Massachusetts Rules of Professional Conduct became effective on January 1, 1998, replacing the Massachusetts Canons of Ethics and Disciplinary Rules Regulating the Practice of Law (Disciplinary Rules). See S.J.C. Rule 3:07, as appearing in 426 Mass. 1303 (1998). As the respondent's misconduct occurred prior to January 1, 1998, the Disciplinary Rules are applicable to this case. See *Matter of Bailey*, 439 Mass. 134, 145 n.13 (2003).

respondent be suspended indefinitely from the practice of law. The respondent filed an appeal from the hearing officer's decision in which he claimed, inter alia, that the hearing officer erred in applying the doctrine of collateral estoppel to preclude him from challenging certain allegations set forth in the petition for discipline. The respondent also asserted that his rights to procedural due process were violated because the board's chairman ruled on bar counsel's motion to preclude, and then the chairman was appointed to be the hearing officer for the disciplinary proceedings.

On January 18, 2007, an appeal panel filed its report, adopting the hearing officer's findings of fact, conclusions of law, and recommended sanction. The appeal panel concluded that the hearing officer did not err in applying the doctrine of collateral estoppel and precluding the respondent from challenging the facts found by the Superior Court judge in the underlying civil action. Further, the appeal panel concluded that the board's chairman was not precluded from serving as the hearing officer in these disciplinary proceedings.

The board adopted the report of the appeal panel[12] and filed an information with the county court pursuant to S.J.C. Rule 4:01, § 8 (4), as appearing in 425 Mass. 1309 (1997), recommending that the respondent be suspended indefinitely.[13] The single justice reserved and reported the case, without decision, to the full court. The respondent now contends that (1) the doctrine of collateral estoppel was improperly and unfairly invoked to preclude litigation of the facts alleged in the petition for discipline; (2) his request for a continuance of the disciplinary hearing should have been allowed; and (3) the appropriate sanction for his misconduct was a term suspension. We consider each of these issues in turn.

2. *Standard of review.* The standard of review for appeals from bar discipline proceedings is well established. "[A]lthough

[12]The board stated that, while it questioned whether converted funds constituted funds of a "client" within the meaning of S.J.C. Rule 3:07, Canon 9, DR 9-102, as appearing in 419 Mass. 1303 (1995), the respondent's conversion of the funds was a dishonest act that warranted the sanction proposed by the hearing officer.

[13]One member of the board concluded that disbarment was the appropriate sanction for the respondent's misconduct.

not binding on this court, the findings and recommendations of the board are entitled to great weight." *Matter of Fordham*, 423 Mass. 481, 487 (1996), cert. denied, 519 U.S. 1149 (1997), citing *Matter of Hiss*, 368 Mass. 447, 461 (1975). "[S]ubsidiary facts found by the [b]oard and contained in its report filed with the information shall be upheld if supported by substantial evidence, upon consideration of the record." S.J.C. Rule 4:01, § 8 (4). " 'Substantial evidence' means such evidence as a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1 (6). "While we review the entire record and consider whatever detracts from the weight of the board's conclusion, as long as there is substantial evidence, we do not disturb the board's finding, even if we would have come to a different conclusion if considering the matter de novo." *Matter of Segal*, 430 Mass. 359, 364 (1999).

3. *Application of collateral estoppel.* The respondent contends that the board's chairman erred in precluding him from challenging the allegations in the petition for discipline because the chairman did not review the entire record of the proceedings before the Superior Court and the Appeals Court to determine exactly what facts were actually litigated and essential to the judgment in favor of GPFC. In the absence of such review, the respondent continues, the board's chairman could not conclude that application of the doctrine of collateral estoppel was warranted. We disagree.

This court has opined that "the offensive use of collateral estoppel is appropriate in bar disciplinary proceedings." *Bar Counsel* v. *Board of Bar Overseers*, 420 Mass. 6, 10-11 (1995) (relitigation "would not comport with the judicial goals of finality, efficiency, consistency, and fairness"). See *Matter of Cohen*, 435 Mass. 7, 15 (2001). The offensive use of collateral estoppel "occurs when a plaintiff seeks to prevent a defendant from litigating issues which the defendant has previously litigated unsuccessfully in an action against another party." *Bar Counsel* v. *Board of Bar Overseers*, *supra* at 9. "For the doctrine to apply, there must be 'an identity of issues, a finding adverse to the party against whom it is being asserted, and a judgment by a court or tribunal of competent jurisdiction.' " *Matter of Cohen*, *supra*, quoting *Miles* v. *Aetna Cas. & Sur. Co.*, 412 Mass. 424,

427 (1992). "A defendant must also have a 'full and fair opportunity to litigate the issue in the first action.' " *Matter of Cohen, supra,* quoting Restatement (Second) of Judgments § 29 (1982). See Restatement (Second) of Judgments § 27 comment d (1982) ("When an issue is properly raised . . . and is submitted for determination, and is determined, the issue is actually litigated . . ."). Further, the determination of the issues for which preclusion is sought must have been essential to the underlying judgment. See *Jarosz* v. *Palmer,* 436 Mass. 526, 532-533 (2002). The fact finder is afforded wide discretion in deciding whether collateral estoppel should be applied in a particular case. See *Bar Counsel* v. *Board of Bar Overseers, supra* at 12, and cases cited.

Here, when bar counsel filed the petition for discipline, attached thereto were the determinations of the Superior Court judge and the Appeals Court, which subsequently would be reviewed by the board's chairman for their preclusive effect. In its action before the Superior Court, GPFC alleged that the respondent had converted GPFC's funds, and it sought to recover $100,000 that had been misappropriated. "The elements of conversion require that a defendant be proved to have 'intentionally or wrongfully exercise[d] acts of ownership, control or dominion over personal property to which he has no right of possession at the time . . . .' " *Grand Pac. Fin. Corp.* v. *Brauer,* 57 Mass. App. Ct. 407, 412 (2003), quoting *Abington Nat'l Bank* v. *Ashwood Homes, Inc.,* 19 Mass. App. Ct. 503, 507 (1985). In concluding that the elements of conversion had been satisfied, the judge determined, inter alia, that (1) the respondent knew that he had received the $750,000 from GPFC in accordance with the terms of the escrow agreement between GPFC and Commonwealth Snack pertaining to the use of such funds; (2) the respondent was obligated to return such funds to GPFC on request; (3) the respondent had no legal right to retain such funds to pay past or future legal or consulting fees owed by Commonwealth Snack to Brauer & Brauer and Decnos; (4) the respondent intentionally exercised dominion over the funds and deprived GPFC of their use; (5) the respondent intentionally delayed returning the funds to GPFC so that Decnos could obtain an attachment; (6) the respondent's father knew that GPFC had

demanded the return of its escrowed funds and that Common-wealth Snack had instructed Brauer & Brauer to return those funds to the China Trust Bank; and (7) the respondent failed to inform the Dedham District Court of the facts surrounding the escrow agreement. On appeal, after reviewing the judge's "comprehensive" findings, the Appeals Court stated that such findings were "amply supported in the record." *Grand Pac. Fin. Corp.* v. *Brauer, supra* at 409.

We agree with bar counsel that the factual circumstances pertaining to the issue whether the respondent had converted funds belonging to GPFC were actually litigated, and the judge's findings of fact and conclusions of law on that issue were essential to the final judgment in GPFC's favor on its conversion claim. The judge's findings were mirrored in the allegations of misconduct set forth in the petition for discipline, with the exception of paragraph 17 of the petition, pertaining to purported conflicts of interest. See note 8, *supra*. Accordingly, the board's chairman did not err in concluding that the respondent should be precluded from challenging the factual allegations set forth in the petition for discipline (except paragraph 17), where those facts were established adversely to the respondent in proceedings before the Superior Court.

Relying on *Bell* v. *Stephens*, 403 Mass. 465 (1988), the respondent argues that the board's chairman was required to review the *entire* record of the proceedings before the Superior Court and the Appeals Court before determining whether issue preclusion was warranted, and that the board's chairman failed to do so. In that case, the plaintiff, who was found guilty of assault and battery with intent to murder a Massachusetts State trooper, assault and battery on the trooper by means of a dangerous weapon, and carrying a firearm without authority, sued the Commonwealth and the State trooper for injuries he sustained in a "shoot out," alleging, inter alia, negligent hiring and training of the trooper. See *id.* at 465-467. The trooper filed a motion to dismiss the complaint on the ground that the facts determined in the plaintiff's criminal trial could not be relitigated in his civil action, and such facts were dispositive of the plaintiff's claims against the trooper. See *id.* at 466. A judge in the Superior Court agreed and dismissed the plaintiff's complaint. See *id.* On appeal, this

court stated that the record before the motion judge "failed to show that the plaintiff was seeking solely to relitigate 'issues decided against the criminal defendant in the criminal prosecution.' " *Id.*, quoting *Aetna Cas. & Sur. Co.* v. *Niziolek*, 395 Mass. 737, 743 (1985). We concluded that because "[t]he complaint itself did not demonstrate a basis for issue preclusion," the motion judge was required to examine the record of the prior trial "to decide what issues of fact were actually litigated and necessarily determined." *Id.*

In the present case, GPFC's civil complaint raised, inter alia, a claim for conversion, the trial judge set forth detailed findings of fact and conclusions of law addressing that particular issue, the Appeals Court held that the judge's findings were amply supported by the record, and the board's chairman had both underlying decisions before him in considering whether collateral estoppel was applicable. Unlike the circumstances in *Bell* v. *Stephens*, *supra* at 466-467, there was no uncertainty here as to what facts were actually litigated and necessarily determined in the trial court. We are unpersuaded that a more comprehensive review of the *entire* record of the proceedings before the Superior Court and the Appeals Court, including the respondent's verified answer to the petition for discipline, would have made any material difference with respect to the board chairman's determination on issue preclusion. The respondent's belief that the underlying civil action was wrongly decided by both the Superior Court and the Appeals Court does not alter our conclusion about what issues were previously litigated. The board's chairman had all of the relevant information he needed to determine whether collateral estoppel was appropriate in the circumstances of this case.[14]

The respondent further contends that the application of principles of collateral estoppel in these bar discipline proceedings was unfair. In essence, he asserts that he received ineffective assistance of counsel during the civil litigation before the Superior Court because he, his father, and Decnos were all represented by the same attorney, even though, as the respondent now claims,

---

[14]We add that the respondent provided the board's chairman with the trial transcript of the Superior Court proceedings when he filed his motion to strike or amend the preclusion order.

there were a number of instances when his interests diverged from those of his father. In the respondent's view, the quality of his legal representation presented a compelling circumstance that warranted further consideration by the board. Moreover, at the disciplinary hearing, he was only permitted to submit affidavits from Attorney Keating questioning the effectiveness of the joint representation. See note 10, *supra.*

Once the initial criteria for application of the doctrine of collateral estoppel have been satisfied, we consider whether such application would be "fair" in a particular case. See *Matter of Cohen*, 435 Mass. 7, 16-17 (2001), and cases cited. See also *Bar Counsel* v. *Board of Bar Overseers*, 420 Mass. 6, 11-12 (1995). In making that determination, "courts generally ask whether (1) the party in whose favor the estoppel would operate could have joined the original action, (2) the party against whom it would operate had an adequate incentive to defend the original action vigorously, (3) 'the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant,' and (4) 'the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result.' " *Haran* v. *Board of Registration in Med.*, 398 Mass. 571, 577-578 (1986), quoting *Parklane Hosiery Co.* v. *Shore*, 439 U.S. 322, 329-331 (1979). See *Matter of Cohen, supra* at 17.

Based on our review of these considerations, we conclude that the application of collateral estoppel was not unfair to the respondent. First, bar counsel could not have joined the underlying action brought by GPFC in the Superior Court because bar counsel had no standing in those proceedings. See *Bonan* v. *Boston*, 398 Mass. 315, 320 (1986) (standing requires "a definite interest in the matters in contention in the sense that [a plaintiff's] rights will be significantly affected by [the] resolution of the contested point"). Second, the respondent had every incentive to defend that action vigorously, given the considerable professional and financial stakes involved, and he did so at both the trial and appellate levels. Third, the judgment in favor of GPFC was not inconsistent with any previous judgments in favor of the respondent. Finally, these disciplinary proceedings did not afford

the respondent any procedural opportunities, unavailable in the civil action, that could have readily caused a different result. See, e.g., *Andrews, petitioner*, 449 Mass. 587, 591 (2007) (fact finder in civil case usually employs fair preponderance of evidence standard); *Matter of Budnitz*, 425 Mass. 1018, 1018 n.1 (1997) (bar discipline charges need only be proven by preponderance of evidence). The respondent's argument that the application of principles of collateral estoppel was unfair because, in his view, he received inadequate representation during the Superior Court proceedings is unavailing. The respondent had ample opportunity to raise any concerns about his trial counsel in his appeal from the final judgment in favor of GPFC, and he failed to do so. Moreover, the respondent never filed a motion for a new trial on the basis of ineffective assistance of counsel. See Mass. R. Civ. P. 59, 365 Mass. 827 (1974). There simply was no unfairness to the respondent in this regard.[15]

The respondent also has asserted that the many hats allegedly worn by the hearing officer, Attorney Alan D. Rose, did not give rise to an appearance of fairness. The respondent points out that before assuming the role of hearing officer, Attorney Rose allowed bar counsel's motion to preclude and issued the preclusion order, both while acting as board chairman. Further, the respondent presumes that Attorney Rose selected the appeal panel that reviewed his own findings as hearing officer, and then reviewed the appeal panel report in his capacity as chairman of the board. In the respondent's view, the various roles purportedly assumed by Attorney Rose cast an unfair light on the disciplinary proceedings, and, consequently, the disciplinary process should begin anew. We disagree.

The respondent has cited no authority, and we have found none, for the proposition that when a member of the board decides a prehearing motion, that member then is precluded from serving as a special hearing officer in the subsequent disciplinary proceedings. In other types of cases, adjudicators routinely preside over cases in which they have heard motions. See, e.g., *Com-*

---

[15]We note that in a supplemental statement filed by the respondent in opposition to bar counsel's motion to preclude, the respondent stated that he "[did] not suggest he did not offer a vigorous joint civil defense to [GPFC's] Norfolk Superior Court complaint."

*monwealth* v. *Adkinson*, 442 Mass. 410, 415 (2004) (judge not required to recuse himself from hearing case jury-waived merely because he ruled on suppression motion). In its report, the appeal panel noted that the respondent never moved to recuse the special hearing officer. We add that Rule 3.54 of the Rules of the Board of Bar Overseers (2007) provides that "[t]he Chair shall not be disqualified from subsequent consideration or decision of a matter solely on the ground that he or she ruled on a motion or an appeal in his or her capacity as Chair." The mere fact that the board chairman *may* have designated the three members of the panel that would hear the respondent's appeal from the determination the chairman made while sitting as a special hearing officer, a fact not apparent from the record, did not render the proceedings unfair. See Rule 3.50(d) of the Rules of the Board of Bar Overseers (2007) (pertaining to assignment of appeals). Attorney Rose plainly did not appoint himself as a member of the appeal panel. Further, even if Attorney Rose had selected the appeal panel, the respondent has not alleged any prejudice that would lead us to conclude that the disciplinary proceedings were unfair.[16]

4. *Request for continuance.* The respondent next contends that the hearing officer abused his discretion in denying the respondent's (second) request for a continuance of his disciplinary hearing. Bar counsel filed the petition for discipline on March 26, 2004, bar counsel's motion to preclude the respondent from contesting the factual allegations in the petition was allowed on February 15, 2005, and the respondent's disciplinary hearing was scheduled for June 21-22, 2005. That hearing was continued, at the respondent's request, because his attorney was in poor health, but the hearing officer advised the parties that once a new hearing date was scheduled, he would look with disfavor on any further requests to continue the proceedings. The respondent's current attorney filed an appearance on June 1, 2005, the disciplinary hearing was rescheduled for October 19-21, 2005, and the hearing officer indicated that no further continuances would be allowed, "save for grave cause." The health of the respondent's original counsel did not improve, and it became apparent in September, 2005, that his current attorney would have to assume

---

[16]The record suggests that Attorney Rose's membership on the board expired before the board reviewed the report of the appeal panel.

sole responsibility for the respondent's defense. Around this same time, the current attorney undertook a review of the proceeding before the Superior Court in the GPFC action, consulted with another lawyer, and formed the opinion that the respondent had been inadequately represented at trial, given that one attorney had represented the respondent, his father, and Decnos, thereby creating what appeared to be a conflict of interest.[17] This purported conflict, in the view of the respondent's counsel, had a significant bearing on the fairness of applying principles of collateral estoppel to these disciplinary proceedings. The respondent filed another motion for a continuance on October 5, 2005, asserting that counsel needed more time to investigate and present expert evidence on the underlying conflict of interest issue. Bar counsel opposed the motion, and it was denied by the hearing officer on October 12, 2005. The respondent now asserts that his motion for a continuance of the disciplinary hearing should have been allowed. We disagree.

"The decision whether to grant a motion to continue lies within the sound discretion of the trial judge[, . . . and a] denial of a continuance will not constitute error absent an abuse of that discretion." (Citations omitted.) *Commonwealth* v. *Miles*, 420 Mass. 67, 85 (1995). See *Mowat* v. *Deluca*, 330 Mass. 711, 712 (1953). "In considering a request for a continuance, a trial judge should balance the movant's need for additional time against the possible inconvenience, increased costs, and prejudice which may be incurred by the opposing party if the motion is granted." *Commonwealth* v. *Gilchrest*, 364 Mass. 272, 276 (1973).

The hearing officer concluded that the respondent had failed to demonstrate good cause to continue the disciplinary hearing. He stated that all parties had known for months that the respondent's original counsel had health problems and would likely withdraw from the case. The hearing officer pointed out that as far back as February 14, 2005, he had made it clear that collateral estoppel would be applicable in these proceedings. He noted that the motion filed by the respondent's current counsel

---

[17]We note that in his motion to strike or amend the preclusion order, filed on August 2, 2005, and signed by both the respondent's former and current counsel, the respondent stated that there was reason to doubt the quality of his representation in proceedings before the Superior Court.

offered no rationale for waiting until the eve of the disciplinary hearing to speak with an expert witness, and that counsel's delay in this regard carried the inevitable consequence that the expert would not be sufficiently prepared. Notwithstanding the respondent's tardiness, the hearing officer stated that he would permit the respondent to make a formal proffer of the witness's testimony for introduction after the commencement of the hearing. Finally, as to counsel's assertion of scheduling conflicts, the hearing officer pointed out that all of the parties had participated in the establishment of the hearing dates. We conclude that the hearing officer properly weighed the respondent's need for additional time against the orderly processing of the disciplinary case. There was no abuse of discretion in the hearing officer's denial of the respondent's motion for another continuance.

5. *Appropriateness of sanction.* The respondent argues that the appropriate sanction for his misconduct was a term suspension, not indefinite suspension. Most significantly, he points out that he did not misuse client funds because GPFC was not his client. The respondent also asserts that he did not engage in any furtive or deceitful behavior, and that the petition for discipline did not allege that he made any misrepresentations to the Dedham District Court. Therefore, in the respondent's view, a disciplinary sanction of indefinite suspension was too harsh. We disagree.

When considering a disciplinary sanction, we examine whether the sanction "is markedly disparate from judgments in comparable cases." *Matter of Finn*, 433 Mass. 418, 423 (2001). See *Matter of Kerlinsky*, 428 Mass. 656, 664, cert. denied, 526 U.S. 1160 (1999); *Matter of Alter*, 389 Mass. 153, 156 (1983). "While this standard is relatively simple to state, it is one which is not always easy to apply because of factual nuances that distinguish cases from each other." *Matter of Shaw*, 427 Mass. 764, 768 (1998). We give substantial deference to the recommendation of the board. See *Matter of Foley*, 439 Mass. 324, 333 (2003); *Matter of Finn, supra.* Ultimately, we decide each bar discipline case "on its own merits and every offending attorney must receive the disposition most appropriate in the circumstances." *Matter of the Discipline of an Attorney*, 392 Mass. 827, 837 (1984). We add that it is entirely appropriate for this court to consider the cumulative effect of multiple violations committed by a respondent.

See *Matter of Tobin*, 417 Mass. 81, 88 (1994); *Matter of Palmer*, 413 Mass. 33, 38 (1992). The overriding consideration in bar discipline is "the effect upon, and perception of, the public and the bar." *Matter of Kerlinsky*, *supra*, quoting *Matter of Finnerty*, 418 Mass. 821, 829 (1994). "We must consider what measure of discipline is necessary to protect the public and deter other attorneys from the same behavior." *Matter of Concemi*, 422 Mass. 326, 329 (1996).

The presumptive sanction for the temporary or permanent misappropriation of client funds is disbarment or indefinite suspension. See *Matter of Schoepfer*, 426 Mass. 183, 186-187 (1997), and cases cited. More recently, in *Matter of Hilson*, 448 Mass. 603, 618 (2007), we held that "misappropriation of third-party funds in the course of, or in circumstances related to, the practice of law" should result in a disciplinary sanction of disbarment or indefinite suspension. Contrast *Matter of Barrett*, 447 Mass. 453, 464-465 (2006) (misappropriation of third-party funds by attorney not acting in practice of law warranted two-year suspension). In *Matter of Hilson*, *supra* at 619, we opined that "[a]lthough we presently discern a basis to treat differently the attorney who acts dishonestly by misappropriating the funds of another while acting outside the practice of law from the attorney who does so while acting within the practice of law, we see no reason to treat differently an attorney who misappropriates third-party funds from the attorney who misappropriates client funds when the misconduct occurs within the practice of law. It is the violation of the trust of the office, not from whom the money is taken, that is the gravamen of the ethical breach."

Here, the respondent converted funds that he was holding in escrow for the benefit of his client, Commonwealth Snack, so that the Dewey lawsuit could be settled. The respondent plainly was acting within the practice of law when he engaged in such misconduct. We add that while the respondent eventually returned the converted funds to GPFC, the respondent did so only after he was sued by GPFC in the Superior Court and lost on appeal. See *Matter of LiBassi*, 449 Mass. 1014, 1017 (2007) (restitution made through court action not considered in mitigation of sanction). In addition to the respondent's conversion of the escrowed funds, the board found that the respondent, while harbor-

ing conflicting interests, had engaged in deceptive conduct by delaying the return of GPFC's funds in disregard of Commonwealth Snack's explicit instructions, and the respondent had failed to inform the Dedham District Court that the escrowed funds belonged to GPFC, not Commonwealth Snack and, therefore, could not be subject to attachment. Given that bar counsel sought an indefinite suspension, that the respondent was motivated largely by a desire to help his father recoup the $77,000 owed to Decnos, and that the respondent's misconduct appeared to be an isolated event, we conclude that the board's recommended sanction of an indefinite suspension from the practice of law was appropriate and not "markedly disparate" from sanctions imposed in comparable cases.

6. *Conclusion.* This case is remanded to the single justice for the entry of an order suspending the respondent from the practice of law indefinitely.

*So ordered.*