ELIZA J. BRAY *vs.* FREDERICK O. RAYMOND.

Essex.     January 3, 1896. — May 22, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Replevin — Action — Title — Husband and Wife — Evidence.*

Replevin cannot be maintained by one who is not the sole owner of the property replevied.

In an action of replevin by a married woman, if the defendant, who had attached the replevied property upon a writ against the plaintiff's husband, contends that,

although she had filed a certificate that she was carrying on business upon her separate account, the property belonged to her and her husband jointly, and the business was carried on by them jointly, evidence of the husband, on cross-examination, which has some tendency to show what the relations between him and his wife were respecting the business and the attached property is properly admitted; and evidence of the defendant and of the plaintiff in the writ who went with him when he served it, admitted solely as affecting the testimony of the husband, and as part of the conversation with him, and as explaining what he said and failed to say, is competent for that purpose.

The writ upon which property was attached with the officer's return upon it, and the schedule of the attached property, are admissible in evidence, in an action of replevin to recover the property, in justification of the defendant's title, and are not rendered incompetent by the fact that, at the time when the replevin suit was brought, execution had been issued and levied upon the property attached.

REPLEVIN of certain personal property, including the stock and fixtures of a bakery. Writ dated January 9, 1894. The answer alleged that the defendant, as a deputy sheriff, attached the property as the property of William Bray and George E. Gammon, by virtue of a writ in an action against them by one Came and another; and that on January 3, 1894, by virtue of an execution issued upon the judgment obtained in that action, he levied upon the property in question as the property of Bray and Gammon. Trial in the Superior Court, before *Bishop*, J., who allowed a bill of exceptions, in substance as follows.

The plaintiff, who was the wife of William Bray, contended that, in 1889, she furnished the money to purchase the business, and filed in the office of the city clerk of Haverhill a married woman's certificate, and began to carry on the business on her own account, with her husband as manager; that on November 9, 1893, she conveyed a one half interest in the property and business to Gammon; that on November 15, 1893, she filed in the city clerk's office a notice that she discontinued carrying on the business on her own account; that it was proposed that Gammon and her husband should thereafter carry on the business as partners, and there were negotiations to that effect; that while the same were pending, on November 16, 1893, the property was attached by the defendant on a writ in favor of Came and Potter against Bray and Gammon; that Gammon, having failed to pay her the consideration agreed upon for her sale of a half interest to him, went to her house and left with her, or in her custody, the bill of sale she had given him; that until No-

vember 9, 1893, she was the sole owner of the property, and the subsequent return to her by Gammon of the bill of sale of that date operated as a rescission of the sale, and at the date of the writ in the present case she was the sole owner; and that, if she was a joint owner with Gammon, she could maintain this action.

The defendant contended that, although the plaintiff had filed a married woman's certificate, the property was owned and the business was carried on by the husband and wife jointly; that, when she conveyed a half interest in the property and business to Gammon, she parted with all the interest she had in the property and business; that thereafter the husband and Gammon were the owners thereof, and the property was rightly attached in the suit against them; and that, if the plaintiff was joint owner with Gammon, she could not maintain this action.

The plaintiff called her husband as a witness, who testified that his wife originally furnished $500, which was all the money put into the business, and he purchased the property in question; that the purchase money came from the business, except for one horse, for which he gave his own note in part; that as to one buggy, he bought it for "us both for the business"; that at the time of the bill of sale to Gammon, he did not own any interest in the property, except in the horse; and that the plaintiff devoted her time to the business. On cross-examination, he testified: "I treated this as the joint business of my wife and myself; did not consider we were partners; when anything was traded it was practically for the business." He further testified that he was agent for the steamer City of Haverhill, and whether what he received for services as agent went into the business he could not tell.

In the course of his cross-examination he was asked: "How much does the business of you and your wife owe that has not· been paid?"

This question was objected to, but admitted, and the witness answered: "Well, somewhere in the vicinity of $2,000. These were not all due. We were doing business on thirty days' time."

He was also asked: "What had you owned in value on the 18th of November, when this attachment was made, except what Mr. Raymond attached?"

This question was objected to, but admitted, and the witness answered: "Well, there was $4,000 worth of stuff, including — it was what I had sold after that at private sale."

He was further asked the following questions, which were objected to, but admitted, and answered as follows:

"*Q.* Among this property is a race-horse, is n't there? *A.* Not exactly; no.

"*Q.* Well, it turned out not exactly, but you thought it was a race-horse, did n't you? *A.* No."

The plaintiff excepted to the admission of all the evidence objected to.

The plaintiff also testified substantially the same as her husband as to furnishing the money and the manner of carrying on the business.

The defendant testified that he went to the plaintiff with the writ of Came and Potter against Bray and Gammon in his possession before he served it, and asked her if she owned any of the stable property, and if she owned the bakery property, and she said no, he must go and ask her husband; that when he went to the stable to attach the horses and wagons Bray and Gammon drove in, and he asked them who owned the property there, specifying particular horses, wagons, "and so forth"; that Gammon in Bray's presence said that he owned half of them, and had bought and paid for them, and now he would know where he stood; and that Bray pointed out certain property that did not belong to them. This testimony was offered and admitted solely as affecting the testimony given by Bray as a witness, and as a part of the conversation with Bray, and as explaining what Bray said and failed to say. The plaintiff excepted to its admission. Gammon was not called as a witness.

The defendant then produced the writ of Came and Potter against Bray and Gammon, containing a schedule of the property attached upon the same, and the return of the officer showing the attachment and service, and the writ was admitted in evidence and the schedule read, against the plaintiff's objection; and the plaintiff excepted.

Warren D. Potter, one of the plaintiffs in the writ against Bray and Gammon, testified that he went with the defendant to serve the writ, and he testified to substantially the same conver-

sation as testified to by the defendant. This testimony was admitted upon the same ground; and the plaintiff excepted.

The plaintiff requested, among others, the following instructions to the jury:

1. If the plaintiff owned an undivided interest in the property on the day the same was attached by the defendant, and the defendant as sheriff attached the whole property as the property of the other co-tenant exclusively, and did not recognize that the plaintiff had any interest in the property, the defendant as sheriff exceeded his authority and became a trespasser *ab initio;* and he stood in relation to the property as a stranger, and the plaintiff is entitled to recover.

2. If the plaintiff owned an undivided interest in the property as tenant in common with another person, and the defendant as sheriff levied on the whole property as the property of such other person, and intended and attempted to sell the whole property as the property of such other person, and did not recognize the interest of the plaintiff as tenant in common of said property, but claimed that the plaintiff had no interest in said property, the defendant as officer and sheriff became a trespasser *ab initio,* and stood as a stranger in relation to said property, and therefore the plaintiff is entitled to recover.

The judge declined to give these instructions; and instructed the jury that, in order to maintain the action, the plaintiff must show that she was the sole owner of the property replevied, and that it was not enough that she should have had an interest in it with another, but that in replevin it is a good defence that the property is in the plaintiff and another; and the plaintiff excepted.

The jury returned a verdict for the defendant; and the plaintiff alleged exceptions.

*W. S. Peters & H. J. Cole,* for the plaintiff.

*W. H. Moody & H. E. Bartlett,* (*J. H. Pearl* with them,) for the defendant.

MORTON, J. This was an action of replevin. In order to maintain it the plaintiff was bound to show, as the court instructed the jury, that she was the sole owner of the property replevied. *Hart* v. *Fitzgerald,* 2 Mass. 509. *Fay* v. *Duggan,* 135 Mass. 242. *Corcoran* v. *White,* 146 Mass. 329. The instruc-

tions requested were to the effect that if the officer attached and levied on the property as the property of another, and the plaintiff owned an undivided interest in it, she was entitled to recover. They were rightly refused. If she failed to establish that she was the sole owner, the conduct of the officer in attaching the property as the property of another gave her no right of action; an undivided interest was not sufficient.

The defendant contended that, although the plaintiff had filed a certificate that she was carrying on business as a married woman on her own account, the property belonged to her and her husband jointly, and that the business was carried on by them jointly. The testimony of the husband on cross-examination had some tendency to show what the relations between the plaintiff and her husband were respecting the business and the property that was attached and levied on, and therefore was properly received.

The testimony of the defendant and of Potter was admitted solely as affecting the testimony given by Bray, the plaintiff's husband, and as part of the conversation with Bray, and as explaining what Bray said and failed to say, and for that purpose was clearly competent. He had testified that he had no interest in the property except a certain horse, and the testimony went directly to his credibility.

The writ against Bray and Gammon, with the officer's return upon it and the schedule of the property attached, was admissible in justification of the defendant's title, and was not rendered incompetent by the fact, if it was a fact, that at the time when the replevin suit was brought execution had been issued, and had been levied upon the goods attached. The statute expressly provides that goods attached may be kept thirty days after final judgment in order that they may be taken on execution, and the attachment was one step towards the levy on execution. It is stated in the exceptions, that the defendant attached the goods, but it is nowhere set out that they had been taken on execution, though that is alleged in the answer, and is perhaps to be inferred.

*Exceptions overruled.*