Lauriat, Peter M., J.
Kamee Verdrager (“Ms. Verdrager”) brought this employment discrimination action against the defendants, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. (“Mintz Levin”), R. Robert Popeo (“Mr. Popeo”), David Barmak (“Mr. Barmak”), Bret Cohen (“Mr. Cohen”), Robert Gault (“Mr. Gault”), and Donald Schroeder (“Mr. Schroeder”) (collectively “the defendants”), alleging sex discrimination and retaliation under G.L.c. 151B, and tortious interference with advantageous employment relations. Ms. Verdrager has now moved for summary judgment on the defendants’ counterclaims for breach of fiduciary duty (Count I); violation of the Computer Fraud and Abuse Act, 18 U.S.C. §1030{A) (Count II); violation of the Stored Wire and Electronic Communications Act, 18 U.S.C. §§2701, 2707 (Count III); conversion (Count IV); replevin (Count V); fraud (VI); breach of contract (Count VII); and breach of implied covenant of good faith and fair dealing (Count VIII). For the following reasons, Ms. Verdrager’s motion is denied as to Counts I, VII, and VIII and allowed as to Counts II, HI, IV, V, and VI.
BACKGROUND
On June 15, 2004, Ms. Verdrager began working at Mintz Levin as an associate in the Employment, Labor, and Benefits section (“ELB”), after accepting an offer of employment with the firm in May of 2004. The offer letter that Ms. Verdrager signed in May contained a section titled “Policies,” which stated: “Each new employee is asked to sign a document evidencing understanding and acceptance of the terms of the confidentiality and insider trading policies . . . All employees are expected to know and abide by the then-current policies.”
On her first day of employment, Ms. Verdrager was presented with Mintz Levin’s Electronic Information Systems Acceptable Use Policy (“EIS Policy”) and a Confidentiality Policy. The EIS Policy provided, in part, that “(t]he [EIS] should be used, with limited exceptions only, for job-related communications. Although limited personal use is permitted, employees should do so with the full understanding that nothing is private.” The Mintz Levin “Confidentiality Policy” provided, in part, that “[a]dherence to this policy is a condition of continued employment and violation of the policy may result in immediate termination of employment.” This policy also stated that “it is presumed that all information regarding a client or a potential client is confidential. Accordingly, disclosure of any such information is prohibited absent specific authorization from the client...” and “please remember that it is also essential to maintain confidentiality and exercise sensitivily regarding general firm business and internal firm and staff related matters and to treat such matters as confidential.” Finally, the Confidentiality Policy provided that “all documents, correspondence, forms and other work product created or produced by the firm . . . are the sole properly of Mintz Levin and its clients. Such material should not be removed from the office or used for any reason other than for or in connection with the delivery of services on behalf of the firm.”
While an employee of Mintz Levin, Ms. Verdrager had access to Mintz Levin’s document management system, DeskSite. The DeskSite system allowed Mintz Levin employees to search for internal documents primarily for collaboration and research purposes. Mintz Levin’s DeskSite system allowed users to designate documents as “public” or “private,” with “public” being the default setting. Public documents were viewable by all employees with a username and password. Private documents could be limited to specific viewers and required further password access.
Approximately two months after beginning her employment, Ms. Verdrager determined that she might be the subject of gender discrimination and began *29 keeping a record of handwritten notes for herself in the event of future litigation. Additionally, Ms. Verdrager used DeskSite on approximately six dates between May of 2007 and November of 2008 to conduct searches for documents within the “public” section of the system that she hoped might support her claims.[1] When she found a document that she believed supported her position, she took a copy or emailed a copy to her personal e-mail account or to her personal attorney. She searched for documents containing her name, Mr. Popeo’s name, and the name of a former Mintz Levin employee in another office who had previously sued the firm for gender discrimination. When Ms. Verdrager found a document she wanted to save, she took a screenshot of it, printed it, or e-mailed it to her personal e-mail account. On one occasion, Ms. Verdrager forwarded to her personal attorney a transcription of Mr. Popeo’s voicemail messages, which included hundreds of voicemails left by clients and others. She also forwarded documents prepared by Mintz Levin attorneys relating to her own pending MCAD claim against the firm, including letters between Mintz Levin and its counsel, and drafts of talking points related to Ms. Verdrager’s MCAD complaint. Ms. Verdrager also took internal write-off documents related to a Mintz Levin client.
On November 21, 2008, Ms. Verdrager advised Kim Marrkand, a member at Mintz Levin, that she was aware of documents indicating widespread discrimination within Mintz Levin, principally the voicemails transcript of Mr. Popeo. Ms. Marrkand immediately brought this to Mr. Popeo’s attention. Mintz Levin conducted a review of its electronic file system to determine which documents Ms. Verdrager had accessed under the firm’s DeskSite system.
The review indicated the extent of Ms. Verdrager’s searches during the time period between May of 2007 and November of 2008. Mr. Popeo was notified of the review findings on November 25, 2008. Believing that Ms. Verdrager had violated Mintz Levin’s confidentiality and computer use policies, as well as the Massachusetts Rules of Professional Conduct, Mr. Popeo immediately directed that Ms. Verdrager’s employment with the firm be terminated.
Shortly after Ms. Verdrager’s termination, Mr. Popeo, on behalf of Mintz Levin, filed a complaint against Ms. Verdrager with the Massachusetts Board of Bar Overseers (“BBO”). Bar Counsel thereafter conducted an investigation and filed a Petition for Discipline, alleging that Ms. Verdrager had misused her access to Mintz Levin’s computer system, violated her fiduciary duties to Mintz Levin, and violated Mass.R.Prof.C. 8.4(b), (c), and (h), and the Computer Fraud and Abuse Act.
A Hearing Committee of the Board of Bar Overseers conducted hearings in March and April of 2011, and issued a report on September 20, 2011. The Hearing Committee found a violation of Mass.R.Prof.C. 8.4(h) only, and recommended a public reprimand. Upon its review, the BBO disagreed with the Hearing Committee’s findings and concluded that Ms. Verdrager had not violated the Massachusetts Rules of Professional Conduct. This decision was affirmed by a Single Justice of the SJC. In the Matter of the Discipline of an Attorney, No. BD-2012-043 (Sup.Jud.Ct. for Suffolk County, August 6, 2012) (Spina, J., single justice).
Mintz Levin filed a Petition for Leave to Submit Written Argument with the BBO on appeal with regard to the matters Bar Counsel decided not to pursue. Both Bar Counsel and Ms. Verdrager filed oppositions to Mintz Levin’s petition, contending that Mintz Levin was not a party to the BBO proceeding. Mintz Levin’s petition was ultimately denied.
Ms. Verdrager filed a second MCAD complaint on September 4, 2009, naming Mintz Levin, Mr. Barmak, and Mr. Popeo as respondents. She subsequently filed the present action in the Superior Court in November of 2009, and filed an amended complaint in January 2012, naming Mintz Levin, Mr. Popeo, Mr. Barmak, Mr. Gault, Mr. Schroeder, and Mr. Cohen as defendants. The amended complaint asserts claims for sex discrimination in employment under G.L.c. 151B, §4(1) against Mintz Levin, Mr. Barmak, Mr. Schroeder, Mr. Gault and Mr. Popeo (Count I); pregnancy discrimination under G.L.c. 15 IB against Mintz Levin (Count II); aiding and abetting discrimination against Mr. Popeo, Mr. Barmak, Mr. Gault, and Mr. Schroeder (Count III); retaliation under G.L.c. 151B, §4(4) against Mintz Levin, Mr. Barmak, Mr. Popeo, Mr. Gault, and Mr. Schroeder (Count IV); failure to investigate and remedy against Mintz Levin (Count V); and tortious interference with business relations against Mr. Cohen (Count VI).
The defendants filed counterclaims for breach of fiduciary duly (Count I); violation of the Computer Fraud and Abuse Act (“CFAA”) (Count II); violation of the Stored Wire and Electronic Communications Act (Count III); conversion (Count IV); replevin (Count V); fraud (Count VI); breach of contract (Count VII); and breach of the implied covenant of good faith and fair dealing (Count VIII).[2] Ms. Verdrager has moved for summary judgment on all of the defendants’ counterclaims.
DISCUSSION
“A party moving for summary judgment... has the burden of demonstrating that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law.” Mass.R.Civ.P. 56(c); Community Nat’l Bank v. Dawes, 369 Mass. 550, 554 (1976); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 713-14 (1991). The burden on the moving party may be satisfied either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating “that the party opposing the motion has no reasonable expec *30 tation of proving an essential element of that party’s case.” Kourouvacilis, 410 Mass. at 716. In deciding a motion for summary judgment, the facts must be viewed “in the light most favorable to .. . [the nonmoving party], taking all the facts set forth in its supporting affidavits as true.” G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 263 (1991), citing Graham v. Quincy Food Serv. Employees Ass’n & Hosp., Library & Pub. Employees Union, 407 Mass. 601, 603 (1990).
I. Collateral Estoppel
Ms. Verdrager first asserts that the defendants’ counterclaims are barred by the doctrine of collateral estoppel. She contends that Justice Spina’s decision on her BBO matter controls as to the issue of whether she engaged in unethical conduct, and therefore the defendants are precluded from arguing those issues before this court. Ms. Verdrager relies on the principle that mutuality of parties is not always required so long as there is an identity of issues. The defendants respond that they have not been given the opportunily to fully and fairly litigate their claims. When Mintz Levin sought to join the BBO matter, Ms. Verdrager opposed their inclusion, and they were precluded from involvement. The defendants assert that the issues before this court were not adequately addressed in the BBO proceedings.
“When an issue of fact or laws is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.” Martin v. Ring, 401 Mass. 59, 61 (1987); see Alba v. Raytheon Company, 441 Mass. 836, 841 (2004). “The guiding principle in determining whether to allow defensive use of collateral estoppel is whether the party against whom it is asserted ‘lacked full and fair opportunity to litigate the issue in the first action or [whether] other circumstances justify affording him an opportunity to relitigate the issue.’ ” Martin, 401 Mass. at 62. Further, “in certain circumstances, mutuality of parties is not required. A nonparty may use collateral estoppel defensively against a party to the original action who had a full and fair opportunity to litigate the issues in question.” Id. at 61.
Here, collateral estoppel cannot apply to the defendants’ counterclaims for two interrelated reasons. The first reason is that the defendants were not parties to the BBO matter. Ms. Verdrager’s argument on this point largely mischaracterizes the doctrine of collateral estoppel.[3] Collateral estoppel is not a shield that one party who was previously involved in favorable litigation can use against a nonparty to that action. Martin v. Ring, supra. The Court in Martin specifically held that non-mutuality of parties does not block the application of collateral estoppel when asserted by a non-party to the first action. Ms. Verdrager’s argument that she can use the Single Justice decision against the non-party defendants turns the law on its head.
The second reason, correctly stated by the defendants, is that there is no identity of issues between the present case and the BBO matter. The issue before the BBO and the single justice of the SJC on appeal was whether Ms. Verdrager violated provisions of Mass.RProf.C. 8.4. While this determination may relate to the claims being asserted by the defendants in this case, Justice Spina’s decision does not unequivocally address each element of the claims before this court. For these reasons, Ms. Verdrager cannot rely on collateral estoppel to preclude the defendants from asserting their counterclaims in the present action.
II. Breach of Fiduciary Duly (Count I)
Ms. Verdrager contends that she was never disloyal to Mintz Levin, based on the legal definition of the fiduciary duly of loyalty, and that her status as an at-will employee bars any conclusion that she breached this duty. In addition, she claims that, as a policy matter, preventing employees from accessing information the way she did would wrongly serve to shield employers from actionable discrimination claims by allowing employers to “punish” employees for making claims of discrimination. Mintz Levin maintains that a significant factual dispute exists as to its breach of fiduciary duty claim and that the evidence in the record supports their claim that Ms. Verdrager breached her fiduciary duty of loyalty to the firm.
As agents of their employers, employees are generally “bound to act solely for [the] employer’s benefit in all matters within the scope of [his or her] employment.” Chelsea Industries, Inc. v. Gaffney, 389 Mass. 1, 11 (1983). Specifically, the SJC has held that attorneys in law firms owe a duty of loyalty to their firms. Meehan v. Shaughnessy, 404 Mass. 419, 437-38 (1989). This is particularly true because these attorneys have “access to clients and information concerning clients and therefore occup[y] positions of trust and confidence.” Id. at 438. In Augat, Inc. v. Aegis, Inc., 409 Mass. 165, 172-73 (1991), the SJC held that an employee intending to leave his or her current employer to compete with the employer “may not act for his future interests at the expense of his employer by using the employer’s funds or employees for personal gain or by a course of conduct designed to hurt the employer.” Id. at 172-73. Such actions amount to a breach of the employee’s fiduciary duty. Id. Here, as an associate employed by Mintz Levin, Ms. Verdrager had a fiduciary duty to the firm. To the extent that Ms. Verdrager attempts to argue that pursuit of her discrimination claim fell outside her scope of employment, her argument must fail. Preventing the dissemination of confidential and privileged documents does not thwart an employee’s ability to pursue a claim of discrimination. Much like the cases where employees plan to compete with their employer in the future, Ms. Verdrager used her position within the firm *31 to access documents that would have been otherwise unavailable to her. It cannot be said that, as a matter of law, Ms. Verdrager owed no fiduciary duly to Mintz Levin, or that there is an absence of evidence that suggests she breached such a duly. Accordingly, summary judgment on Count I of the defendants’ counterclaims must be denied.
III. Computer Fraud (Counts II and III)
Ms. Verdrager asserts that the defendants cannot show that she violated either the Computer Fraud and Abuse Act (“CFAA”) or the Stored Wire and Electronic Communications Act (“SWECA”), because she did not perpetuate a fraud on Mintz Levin and did not “hack” into any computer system to which she did not have rightful access. Mintz Levin argues that sufficient evidence exists on which a fact finder could conclude that Ms. Verdrager violated the CFAA and the SWECA because she exceeded her authorization in order to gain an advantage in litigation against the firm.
The Stored Wire and Electronic Communications Act, 18 U.S.C. §§2701, 2707, provides, in part, that it is unlawful to “intentionally exceed! ] an authorization to access [a facility through which an electronic communication service is provided] and thereby obtain! ] . . . authorized access to a wire or electronic communication while it is in electronic storage in such system.” SWECA was designed to target computer hackers. B13 v. Hamor, 2009 U.S. Dist. Lexis 61819 at *8-9 (N.D.Ill. July 15, 2009). SWECA is more narrowly drawn than CFAA, and courts have held that a violation of SWECA does not exist when the defendant had authorized access to the system involved. See Sherman & Co. v. Salton Maxim Housewares, Inc., 94 F.Sup.2d 817, 821 (E.D.Mich. 2000) (“Section 2701 of the [SWECA] prohibits only unauthorized access and the misappropriation or disclosure of information. There is no violation of section 2701 for a person with authorized access to the database no matter how malicious or larcenous his intended use of that access”); see also Jones v. H. Group, Inc., 2012 U.S. Dist. LEXIS 7162 (D.Oregon January 23, 2012). Because Ms. Verdrager did have log-in access to the Mintz Levin DeskSite system, and there áre no allegations that she “hacked” Mintz Levin computers, a claim under SWECA cannot stand.
It is a violation of the CFAA to “intentionally access! ] a computer without authorization or exceed! ] authorized access and thereby obtain! ] . . . information from any protected computer.” 18 U.S.C. §1030(a) (2). The statute defines “exceeds authorized access” as “to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter!.]” 18 U.S.C. §1030(e)(6). Courts are split on the interpretation of the “exceeds authorized access” language, and there are two main interpretations of this aspect of the statute. Advanced Micro Devices, Inc. v. Feldstein, 2013 U.S. Dist. LEXIS 81206 at *11 (D.Mass. June 10, 2013).
A narrow view would define “authorized access” as whether an individual has been given technical access, e.g., a password log-in, whereas abroad reading would define such access as access that does not “breach]] a duly or loyalty or a contractual obligation, or otherwise acquires an interest adverse to the employer.” Id. Favoring the narrower view, the court in Advanced Micro Devices recognized that an overly broad interpretation may lead to sweeping and unintended effects where “any violation of a contractual obligation regarding computer use becomes a federal tort so long as a veiy minimal damages threshold is met.” Id. at *13.
This is a case where any exceeded computer access would amount to a violation of the CFAA only to the extent that it is a violation of a fiduciary duty or contractual obligation under the broader interpretation of the statute, since Ms. Verdrager clearly had log-in access to the documents she viewed and transmitted. Here, the breach of fiduciary duty and breach of contract counterclaims are not premised on the fact that Ms. Verdrager obtained information in the computer that she was not entitled to obtain. Any employee of Mintz Levin with DeskSite access had the ability to view the documents that Ms. Verdrager found. The only distinction between Ms. Verdrager and other employees of Mintz Levin is that the documents were arguably usable in Ms. Verdrager’s discrimination lawsuit. In this sense, it was not the obtaining of the documents that creates the basis for the defendants’ claims against Ms. Verdrager, but for what use she sought to obtain them. Ms. Verdrager’s disloyally cannot amount to a violation of CFAA. Mintz Levin’s failure to block Ms. Verdrager’s access to documents discussing her case further weakens the defendants’ position that she has violated CFAA. Accordingly, summary judgment must be allowed as to Counts II and III of the defendants’ counterclaims.
IV. Conversion and Replevin (Counts IV and V)
Ms. Verdrager contends that the defendants cannot prove, as a matter of law, that she took ownership of documents of Mintz Levin, or deprived Mintz Levin of possession of documents, as required under the elements of these claims. The defendants assert that copies of documents may be converted where they contain confidential information, and that damages exist since Mintz Levin was deprived of its exclusive control over those documents. The defendants claim further that damages can be shown through evidence that Ms. Verdrager did harm to Mintz Levin’s reputation with clients, and by interrupting Mintz Levin’s regular course of business in order to respond to her actions.
The Restatement ofTorts defines conversion as: “an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of *32 another to control it that the actor may justly be required to pay the other the full value of the chattel.” Restatement Second of Torts, §222A. ‘The elements of conversion require that a [party] be proved to have ‘intentionally or wrongfully exercise[d] acts of ownership, control or dominion over personal properly to which he has no right of possession at the time . . .” In re Brauer, 452 Mass. 56, 67 (2008).
The elements of replevin are: (1) the goods in question have a value greater than twenty dollars; (2) the goods are unlawfully taken or detained; and (3) the owner or person entitled to possession is deprived of the goods. G.L.c. 247, §7. In addition, a parly seeking replevin must be the sole owner of the property. Bray v. Raymond, 166 Mass. 146, 146 (1896).
Here, Ms. Verdrager took “screenshots” or copied documents on DeskSite, and did not deprive other Mintz Levin attorneys from accessing the documents at any point. The basic premise of an action for conversion is that the actual owner is left without the ability to control its rightfully owned property. This is not a situation where an employee gave client lists or other confidential information to a competitor, wholly depriving the defendant of a business advantage. Ms. Verdrager accessed and transmitted internal documents to herself between May 2007 and November 2008, and Mintz Levin was only made aware of this in November of 2008. Prior to that time, Ms. Verdrager’s collection of copies of documents never disrupted Mintz Levin’s ownership of those documents, since anyone looking on DeskSite still had access to them, and it would have been within Mintz Levin’s control to limit Ms. Verdrager’s access.[4] As a result, her actions cannot be said to have amounted to the sort of “serious interference” presupposed in the definition of conversion. Further, Mintz Levin cites to no Massachusetts authority for its contention the loss of confidential status of its documents can serve as the basis of a conversion claim. Because Mintz Levin was neither, deprived of its properly nor subject to a serious interference with its rightful ownership of its documents, summary judgment on Counts IV and V of the defendants’ counterclaims must be allowed.
V.Fraud (Count VI)
Ms. Verdrager asserts that the defendants’ counterclaim for fraud (Count VI), must fail because the defendants have presented no evidence that she made a false statement of material fact. The defendants argue that the evidence supports their view that Ms. Verdrager made false representations, impliedly, that she would uphold her fiduciary duties to the firm and respect its policies, which she knowingly failed to do.
“In a deceit action, the plaintiff must prove ‘that the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to his damage.’ ” Danca v. Taunton Sav. Bank, 385 Mass. 1, 8 (1982) (citations omitted). “Fraud may be perpetrated by an implied as well as by an express representation.” Briggs v. Carol Cars, Inc., 407 Mass. 391, 396 (1990). This is the case where a statement implies that its maker has knowledge to justify the statement, where such knowledge does not actually exist. Id. The defendants’ assertion is that by continuing her employment at Mintz Levin, Ms. Verdrager impliedly represented that she would uphold her duty of loyalty to the firm. However, for purposes of a claim of fraud, an “implied representation” under Briggs still requires an affirmative statement. See id. The position that continued employment is a statement that affirms one’s continued loyalty extends the concept of a “false representation of material fact” beyond its intended meaning. The defendants have not adduced any evidence that Ms. Verdrager made false statements relating to a duty of loyalty to the firm. Accordingly, Count VI of the defendants’ counterclaims must fail as a matter of law.
VI.Breach of Contract (Count VII)
Ms. Verdrager asserts that no contract existed between herself and Mintz Levin, and further, that Mintz Levin failed to allege a specific contract provision that she breached. In response, the defendants contend that a contract did exist and that their offer letter created binding obligations on Ms. Verdrager, since it set out the terms of her employment.
A basic principle of contract law is that “the presence of undefined or unspecified terms will not necessarily preclude the formation of a binding contract. Situation Management Systems, Inc. v. Malouf, Inc., 430 Mass. 875, 878 (2000). An offer letter may form a binding contract between an employer and an employee, particularly where the parties adhere to the material terms of the letter, evidencing an intent to be governed by it. See Prozinski v. Northeast Real Estate Services, 59 Mass.App.Ct. 599, 606 (2003) (an offer letter was a contract even though one provision referenced future negotiations on severance terms).
The offer letter signed by Ms. Verdrager laid out the essential terms of her employment with Mintz Levin, and evidenced an intent to be bound by both parties. Ms. Verdrager’s contention that the offer letter did not amount to a contract is therefore not viable. In addition, her argument that Mintz Levin’s policies cannot serve as contractual provisions that she can be said to have violated must fail because the offer letter clearly states that Mintz Levin employees are bound by company policies. Furthermore, Ms. Verdrager signed the confidentiality and EIS policies on her first day of employment. Thus, issues of material fact exist as to whether Ms. Verdrager breached her contract with Mintz Levin, and summary judgment on Count VII of the defendants’ counterclaims must be denied.
VII.Breach of Implied Covenant (Count VIII)
Ms. Verdrager relies on her breach of contract arguments to support her position that there can be *33 no breach of an implied covenant of good faith and fair dealing where there is no valid contract in place. Maintaining that a valid contract was in place, Mintz Levin argues that Ms. Verdrager lacked good faith when she exceeded her authorized access and transmitted internal documents outside the firm.
Because this court has determined that a question of fact exists as to whether Ms. Verdrager breached her contract with Mintz Levin, and because evidence in the record does suggest that Ms. Verdrager acted in bad faith when she accessed and transmitted certain documents on DeskSite, there remain issues of fact as to whether she breached an implied covenant of good faith and fair dealing. Accordingly, summary judgment must be denied as to Count VIII of the defendants’ counterclaims.
ORDER
For the foregoing reasons, Plaintiffs Motion for Summary Judgment on Defendants’ Counterclaims is ALLOWED as to Counts II, III, IV, V, and VI, and DENIED as to Counts I, VII, and VIII.

On December 11, 2007, Ms. Verdrager filed a complaint with the Massachusetts Commission Against Discrimination (“MCAD”) naming Mintz Levin, Mr. Barmak, Mr. Gault, and Mr. Schroeder as respondents.

The defendants also moved for dismissal of Ms. Verdrager’s action as a sanction for alleged misconduct in accessing Mintz Levin’s ESI. The court (Cosgrove, J.) denied the defendants’ motion, but did not condone Ms. Verdrager’s conduct and noted alternate sanctions that Mintz Levin could seek.

Ms. Verdrager makes her argument by presenting a hypothetical — had she been found in violation of the Massachusetts Rules of Professional Conduct, Mintz Levin would have been able to use the single justice SJC decision to support its position that she acted unethically. She attempts to argue that the converse is equally true where the single justice SJC decision operates in her favor, ignoring the fact that the defendants were not parties to the BBO matter.

In reference to the documents Ms. Verdrager viewed concerning her own discrimination claim against Mintz Levin, Judge Cosgrove in his Memorandum of Decision and Order on Defendants’ Motion for Sanctions in the Form of Dismissal in this case said: “[T]hese documents were placed in the public access section of DeskSite, with the knowledge that Verdrager, the firm’s adversary, could access them . .. [I]t is difficult not to conclude that Mintz Levin waived [privileges] by failing to restrict Verdrager’s access to documents concerning her own lawsuit.” Sanctions Order, at 26.